UNITED STATES of America, Plaintiff-Appellee,

v.

Howard E. HAWLEY, Defendant-Appellant.

No. 683, Docket 76–1469.

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1977.

Decided April 27, 1977.

---

Michael Hartmere, Asst. U. S. Atty., New Haven, Conn. (Peter C. Dorsey, U. S. Atty., New Haven, Conn.), for appellee.

Peter Goldberger, Asst. Federal Public Defender, New Haven, Conn. (Andrew B. Bowman, Federal Public Defender, New Haven, Conn.) for appellant.

Before LUMBARD and FEINBERG, Circuit Judges, and COFFRIN, District Judge.*

COFFRIN, District Judge:

Howard E. Hawley appeals a judgment of conviction in the United States District Court for the District of Connecticut after a trial before Judge Jon O. Newman and a jury. The jury found Hawley guilty of violating 18 U.S.C. § 2113(b) by taking and carrying away, with the intent to steal, money belonging to the Connecticut Bank and Trust Company of New Haven, the deposits of which were insured by the Federal Deposit Insurance Corporation. Hawley argues on appeal that the evidence was insufficient to sustain the conviction and that Judge Newman improperly admitted evidence of Hawley's prior felony conviction[1] for the purpose of impeaching his credibility as a witness. For the reasons set forth below, we affirm.

The record discloses that at approximately 8:25 a.m. on Saturday, December 13,

---

\* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

1. The prior conviction involved an offense actually committed after the offense that is the subject of this appeal. The incident which gave rise to the instant case occurred on De-

cember 13, 1975. On January 20, 1976, Hawley was arrested attempting to break into a closed grocery store. He pleaded guilty and was convicted of the felony of attempted burglary on April 23, 1976. The trial in the instant case concluded on August 25, 1976.

1975, Claudia Siegle, teller-manager, and Deborah Thomsen, a teller at the Connecticut Bank and Trust Company, 299 Whalley Avenue, New Haven, opened the bank for Saturday morning banking hours. Each picked up her metal cash box containing currency from a vault and took it to her station for the day. Miss Siegle also brought out a cardboard box containing about $7,300 of reserve cash and took it with her to her station, the west side drive-in teller's window. To keep that box out of public view, she set it on the floor next to a trash receptacle. The tellers left the bank at approximately 12:25 p.m. that afternoon.

When she arrived at work again on Monday, December 15, 1975, Miss Siegle realized that she had forgotten to replace the cardboard box in the vault at closing on Saturday. When she went to get it from the teller's window the box and the cash were not there. An audit that morning disclosed that $7,401.00 of the bank's funds were missing, but there was no evidence of a forced entry.

Between approximately 6:00 a.m. and 8:15 a.m. on that Monday morning the bank had been cleaned by a crew consisting of appellant Hawley, one Willie Ransom, and their boss, Leroy Umstead. Umstead was in charge of dusting and washing doors and windows, Ransom cleaned the basement lounge area and bathrooms, and Hawley emptied the trash receptacles, including those in the west side drive-in teller's booth. Hawley had brought his dog with him to the bank because he and Umstead had planned to mate their dogs after work that morning. Toward the end of the work period, Hawley left for a short time, then returned to the bank, and then left again and went home, where Umstead picked him up to go on to their next job. The purpose of this brief departure was disputed. Hawley, testifying in his own defense, said that he left to take his dog home because while at the bank he learned that they were later to clean a food store, where dogs were obvi-ously not permitted. The Government's theory was that this departure was Hawley's opportunity to remove the money and that the circumstances of his temporary absence were suspicious.

After the discovery that the money was missing, special agents of the Federal Bureau of Investigation arrived at the bank and, in the course of their investigation, found and seized $3,010.00 of the missing funds on a stairway while proceeding to the basement area of the bank. These funds were contained in four money wrappers which, along with the top and bottom bill of each stack of money, were sent to the FBI laboratory in Washington, D.C. for latent fingerprint identification. The fingerprints of each member of the cleaning crew were taken and forwarded to the laboratory for possible comparison. The FBI developed a latent fingerprint on one of the wrappers which had contained the money. The print matched Hawley's left thumbprint. The print was in an upside down position at a slight angle between the two $1,000 markings on the money wrapper.

Hawley testified that he occasionally found money wrappers on the floor behind various teller's stations and that when he found one he would pick it up and replace it on the counter.[2] The testimony of Miss Siegle and Miss Thomsen contradicted Hawley's in this regard. They testified that the wrappers were rarely dropped, and that when they were, they were promptly picked up in order to keep the bank neat. Miss Siegle's testimony further tended to show that the position of the money wrapper in the tray atop the teller's desk would prevent its being touched there in the manner in which it had to have been touched to leave the thumbprint as it was found by the FBI. Finally, the money wrapper was date stamped and initialed by Miss Siegle on December 8, 1975, and was, according to her testimony, stored in the bank vault between December 8, 1975 and December 13, 1975.

2. There was evidence to the effect that Hawley had helped clean the bank on approximately ten to twenty occasions during 1975.

### The Sufficiency of the Evidence

■ Viewing the evidence in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Falcone,* 544 F.2d 607, 610 (2d Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 1329, 51 L.Ed.2d 595 (1977), we conclude that a reasonable juror could fairly find Hawley guilty. *United States v. Taylor,* 464 F.2d 240 (2d Cir. 1972); *United States v. Rivera,* 513 F.2d 519, 529 (2d Cir.), *cert. denied,* 423 U.S. 948, 96 S.Ct. 367, 46 L.Ed.2d 284 (1975). He was shown to have had the opportunity to commit the crime; he was shown to have made an odd departure from the bank for a brief period of time shortly after the crime could have been committed; and his thumbprint was found on a money wrapper surrounding some of the purloined money despite evidence that it would have been very unlikely for him to have touched that wrapper in any licit circumstances.

The jury was able to assess the credibility of the prime suspects, Hawley and Umstead. The jury was also able to weigh Umstead's testimony that he always returned money he found in the bank and to judge for itself whether or not Hawley's brief departure was "mysterious." Finally, the jury was able to weigh the evidence and the credibility of the witnesses regarding the prior accessibility or inaccessibility of the wrapper to Hawley. On the basis of this evidence, the jury could reasonably reach a verdict of guilty and Judge Newman was fully justified in denying the motions for judgment of acquittal and for a new trial.

### Admission of Prior Conviction Evidence

■ Prior to the presentation of his case, Hawley moved for the exclusion of evidence relating to his prior felony conviction.[3] Judge Newman denied the motion. In view of that ruling, Hawley's counsel brought out the prior conviction in direct examination and the Government, not surprisingly, referred to it again on cross-examination for the purpose of impeaching Hawley's credibility.

Rule 609(a) of the Federal Rules of Evidence states:

> *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

The salient distinction between Fed.R. Evid. 609(a)(1) and 609(a)(2) is, of course, that the trial judge must automatically admit evidence of a prior conviction of any crime involving dishonesty or false statement, but may admit evidence of any other prior felony conviction only after weighing its probative value against the prejudicial effect it would have on the defendant. The separate standards arise in part from the proposition that evidence of prior crimes involving dishonesty or false statement is highly relevant to the trier of fact in the assessment of a witness' credibility, while the same degree of relevance cannot generally be claimed for all other felony convictions.[4]

---

**3.** *See* n.1, *supra.*

**4.** Rule 609(a) in its present form was the result of a fairly stormy controversy in Congress. As Judge Weinstein has described it, the rule, reduced to its essentials, "involves two, sometimes conflicting, ends of criminal law—safeguarding the innocent and punishing the guilty." 3 J. Weinstein & M. Berger, Evidence, ⌐ 609[01] at 609–46 (1975). Because those con-

cerns are so basic to any codification of procedures to be used in trying criminal cases, it is not surprising that Rule 609(a) went through many versions before emerging as the compromise that it is. For a discussion of the legislative history of Rule 609, see *United States v. Jackson,* 405 F.Supp. 938, 940–42 (E.D.N.Y. 1975) (Weinstein, *J.*).

The present rule is not without its detractors. Professor Irving Younger has criticized Rule

In the instant case the Government argues that the admission of the evidence of Hawley's prior conviction for attempted burglary is proper under both Rules 609(a)(1) and 609(a)(2). However, during the argument before Judge Newman on defendant's *in limine* motion, the issue was clearly framed by counsel and the court solely with reference to the balancing test embodied in Rule 609(a)(1) although the rule itself was not specifically mentioned. In any event, it is clear that the Government below did not raise or rely on the 609(a)(2) issue. This being the case, the only conceivable basis for reversal would be that Judge Newman abused his discretion in admitting evidence the prejudicial effect of which outweighed its probative value.

Judge Newman's discussion with counsel regarding the admissibility of the evidence of the prior conviction did not culminate in his making a specific statement that he had weighed all the relevant factors [5] before deciding to admit it. However, there can be no question that he did in fact consider the appropriate factors. Judge Newman specifically mentioned the time of the prior crime ("recent") as well as its nature ("not trivial"). Counsel had themselves adverted to the similarity of the prior offense to the present offense,[6] the importance of Hawley's testimony, and the centrality of the credibility issue. Essentially all of the relevant factors were before Judge Newman when he admitted the evidence. His explicit reference to two of those factors, read in conjunction with the clear implication that he had considered the others, convinces us that he properly exercised his discretion in denying Hawley's motion to exclude the evidence.[7]

Judgment affirmed.

---

609 for its "impenetrable complexity," and suggests that all questions of the admissibility of evidence of a prior conviction ought to be matters for the trial judge's discretion under Rule 403. Younger, *Three Essays on Character and Credibility under the Federal Rules of Evidence,* 5 Hofstra L.Rev. 7, 11–12 (1976).

5. Judge Weinstein, collecting the cases involving defendant-witnesses, beginning with *Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), enumerates the following factors which may profitably be considered by the trial judge:
   (1) The nature of the crime.
   (2) The time of conviction.
   (3) The similarity between the past crime and the charged crime.
   (4) The importance of defendant's testimony.
   (5) The centrality of the credibility issue.
3 J. Weinstein & M. Berger, Evidence, ¶ 609[03] at 609–68 to 609–74 (1975).

6. The statement of counsel for the government that he was not "claiming any prior similar act or subsequent similar act" but that "it should [not] be taken away from the jury on that basis", Tr., at 127, is ambiguous. Evidence of the prior offense might have been proper if offered for any of the purposes permitted by Rule 404(b) of the Federal Rules of Evidence. However, if he was suggesting the admissibility of the prior conviction *because* of the similarity of the two crimes, his approach was exactly contrary to the rationale for considering the degree of similarity of the two offenses. *See* 3 J. Weinstein & M. Berger, Evidence, *supra,* at 609–71. Defense counsel, however, was quick to note the error and to point out to the court that the similarity of the two offenses increased the prejudicial effect of admitting the evidence. There is no reason to assume that Judge Newman incorrectly utilized this factor in reaching his decision.

7. Since we hold that the evidence in the case was admissible under Rule 609(a)(1), there is no occasion for us to determine whether Hawley's conviction for attempted burglary is a crime involving "dishonesty or false statement" and hence required to be admitted under Rule 609(a)(2). We note, however, that the United States Court of Appeals for the District of Columbia Circuit has recently concluded in an exhaustive opinion that attempted robbery was not a crime involving "dishonesty or false statement" within the meaning of 609(a)(2). *United States v. Smith (Gartrell)*, Criminal No. 75–105, slip op. (D.C.Cir. December 17, 1976).