[No. 11316–0–I.   Division One.   June 27, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
JOSEPH TURNER, *Appellant*.

*Van Gemert, Wohl & Wakefield* and *Kim Wakefield,* for
appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *James Tru-
jillo, Deputy,* for respondent.

Andersen, C.J.—

## Facts of Case

The defendant, Donald Joseph Turner, who also goes by the name Dee Dee Jacks, appeals his conviction on two counts of burglary in the second degree following a jury trial.

The testimony at the trial showed as follows.

A young woman who resided in a Seattle apartment house in the Capitol Hill area testified that she was taking some clothes to the basement laundry room on the evening in question. As she walked down the lighted hallway past apartment 105, she saw that the door to that apartment was open about 2 or 3 inches. She could see a person standing by the opening just inside the door. She also noticed that the locks on the door had been broken and pieces of wood were on the floor. From the view she had, she was able to see the person's profile and color and determine that the person was wearing what appeared to her to be a distinctive, black curly wig. She could tell this was not the lady who occupied the apartment, and thought it was the defendant. The defendant lived in a basement apartment and the witness had several times observed the defendant wearing a similar wig.

Shortly afterward, as she returned from the laundry room by the same hallway, she again observed the same person standing in the same place just inside apartment 105. At that time, she also noticed the locks had apparently also been broken off the door to apartment 104 located directly across the hallway from apartment 105.

The apartment of the tenant who saw this was on the same floor as apartments 104 and 105. About 30 minutes later as she left her apartment a second time, she saw and definitely recognized the defendant. He was wearing a black curly wig and had just started to walk through a fire exit door located next to the doors leading to apartments 104 and 105. She testified that when the defendant saw her, he turned and ran. She said that as he ran off she could "hear a jar of change", presumably referring to what sounded to

her like coins rattling in a jar. At this point she became frightened, went to the managers' apartment and reported the foregoing. One of the managers (they were a husband and wife) checked the doors to apartments 104 and 105 and immediately telephoned the police.

Yet later, as the young woman tenant accompanied by the woman manager returned to the managers' apartment, the young woman saw and heard the defendant talking to the woman manager's husband in front of the managers' apartment. The defendant, as she testified, was heard by her to say "Is somebody up here talking about me? Don't be mentioning my name." She also saw the defendant on this occasion and when she did, she told the woman manager who was with her, "I'm going to go back to my apartment because . . . [t]hat's the guy."

The Seattle police officer who arrived in response to the call testified that he found a pry bar had been used on the exterior locks on the doors of both apartments 104 and 105, and that both doors had apparently then been kicked open. Both doors were ajar and both apartments had been ransacked. The defendant either was not in his basement apartment or did not respond to the officer's knock.

The occupant of apartment 104 testified to returning home to his apartment and finding it had been broken into and his property taken. His loss included a large glass jar with about $2 worth of pennies in it.

A detective who obtained a search warrant (the validity of which is not questioned) testified that pursuant to its authority, he went into the defendant's apartment where he found a number of items of property which had been taken in the burglary of apartment 104. These he took as evidence. He also testified that during his search of the defendant's premises, he observed a number of items of property which the occupant of apartment 105 later reported to have been taken from that apartment, but which items could not then be located.

The occupant of apartment 105 did not testify at the trial, nor did the apartment managers.

The defendant testified at trial on his own behalf. His testimony included that he: had been out shopping at the time the burglaries occurred; did not know about the burglaries until 2 or 3 days later; had never been in either of the burglarized apartments; and at least some of the stolen property found in his apartment was from that part of his apartment which was occupied by a friend and which friend, in turn, had received the items from another friend. Still another friend of the defendant testified at trial in support of the defendant's explanation of how the stolen property came to be in the defendant's apartment.

■ Although the defendant challenges the sufficiency of the evidence, it is unnecessary that we extend our discussion of that issue past the foregoing chronology of evidence presented by the State. The fact of the burglaries themselves is uncontroverted. The State's evidence as detailed here, together with reasonable inferences which the jury was entitled to draw therefrom, was clearly sufficient to justify the jury's decision that the defendant was the person who had committed the burglaries of apartments 104 and 105. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Gerber,* 28 Wn. App. 214, 216–17, 622 P.2d 888 (1981). Under our legal system, where evidence is conflicting or of such a character that reasonable minds may differ, as it was here, it is the province of the jury to weigh the evidence, determine the credibility of witnesses and decide the disputed questions of fact. *Gerber,* at 216. The legal test for sufficiency of the evidence having been met, we will not interfere with the jury's finding of guilt.

One other primary issue is presented by this appeal.

## Issue
Did the trial court err in ruling that if the defendant testified, his prior robbery conviction could be shown for purposes of impeachment?

## Decision
CONCLUSION. No. The trial court did not err in ruling as it did because: (1) robbery is a crime which "involved dishon-

esty", therefore, the defendant's conviction of robbery was admissible for impeachment purposes under ER 609(a)(2); and (2) the trial court did not abuse its discretion in ruling as it did, therefore, the defendant's prior robbery conviction was also admissible in this burglary case under the discretionary section of ER 609(a), namely, ER 609(a)(1).

ER 609(a) provides:

> **General Rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) *involved dishonesty* or false statement, regardless of the punishment.

(Italics ours.) Since the defendant's prior robbery conviction does not come within any of the other limitations of ER 609, it was admissible under ER 609(a)(2) if robbery is a crime which "involved dishonesty".

In *State v. Moore,* 29 Wn. App. 354, 364, 628 P.2d 522 (1981), one panel of this court assumed without discussion that "[r]obbery is not a crime involving 'dishonesty or false statements'". Subsequently, a majority of another panel of this court held that crimes of "dishonesty or false statement" under ER 609(a)(2) were limited to a "''"narrow subset of crimes"—those that bear *directly* upon the accused's propensity to testify truthfully'", *State v. Zibell,* 32 Wn. App. 158, 164, 646 P.2d 154 (1982) (quoting *United States v. Fearwell,* 595 F.2d 771, 777 (D.C. Cir. 1978)). The *Zibell* majority concluded that a prior conviction for third degree possession of stolen property was not a crime involving "dishonesty or false statement" and therefore inadmissible under ER 609(a)(2). A different panel of this court had, however, previously expressed its criticism of such a view, declaring:

[The defendant] next argues that evidence of his prior crimes is inadmissible because the crimes did not involve dishonesty or false statement under ER 609(a)(2). We acknowledge, without imprimatur, that there is considerable authority that certain crimes, such as felony–murder and robbery, are not crimes involving deception or dishonesty within the meaning of the rule. *See United States v. Smith,* [551 F.2d 348, 39 A.L.R. Fed. 539 (D.C. Cir. 1976)]; *State v. Moore,* 29 Wn. App. 354, 628 P.2d 522 (1981). This curious position is anchored upon a distinction between crimes of violence and crimen falsi; *i.e.,* between crimes of passion as opposed to those of deception. Fortunately, we are not required to enter this wonderland of illogic because the prior convictions are admissible under ER 609(a)(1).

(Footnote omitted.) *State v. Anderson,* 31 Wn. App. 352, 359–60, 641 P.2d 728 (1982).

■ Although robbery involves assaultive behavior, it also involves theft. We see no merit to the argument that a person's propensity to give false testimony may be shown only by instances of past lying; for it is a fact of life that in many situations, actions speak more loudly than words. Robbery is not considered an "honest" endeavor by society and is not so viewed by this court. We disagree with the majority's analysis of ER 609(a)(2) in *Zibell* and we hold that robbery *is* a crime involving dishonesty. As such, the defendant's conviction was admissible for impeachment purposes under the plain language of ER 609(a)(2) and the trial court did not err in so ruling in response to the defendant's motion in limine at the outset of the trial. *United States v. Bianco,* 419 F. Supp. 507, 508–09 (E.D. Pa. 1976), *aff'd,* 547 F.2d 1164 (3d Cir. 1977); *State v. Day,* 94 N.M. 753, 617 P.2d 142, 148, *cert. denied,* 449 U.S. 860, 66 L. Ed. 2d 77, 101 S. Ct. 163 (1980); *Alexander v. State,* 611 P.2d 469, 475–76 (Alaska 1980); *State v. Fluellen,* 626 S.W.2d 299, 300 (Tenn. Crim. App. 1981); *State v. Price,* 215 Kan. 718, 529 P.2d 85, 89 (1974); *Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154, 1160, *cert. denied,* 456

U.S. 980, 72 L. Ed. 2d 857, 102 S. Ct. 2251 (1982). *See also People v. Dee,* 26 Ill. App. 3d 691, 325 N.E.2d 336, 341–42 (1975).

In ruling as we have, we recognize that there is language in the recent opinion and concurring opinion of the Supreme Court of this state in *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983) which suggests that court may take a contrary position when this issue is squarely presented to it. Until that court so decides, however, it is incumbent upon us to decide the issue on the merits as we see it and this we have done based on what to us is the plain, unambiguous language of the rule as we read it.

■ The other reason that the trial court did not err in ruling as it did is that it appears that the trial court exercised discretion in ruling evidence of the prior robbery conviction to be admissible, therefore, it was admissible under the discretionary provisions of ER 609(a)(1) absent an *abuse of that* discretion. In connection with the defendant's motion in limine in this case, and before ruling on the motion, the trial court heard argument on ER 609, a discussion of *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980) (and the weighing factors therein set forth) and had before it the defendant's trial brief on the issue. It would have been helpful if the trial court had stated the reasons for its ER 609 ruling, but it was not error to fail to do so. *State v. Thompson,* 95 Wn.2d 888, 893, 632 P.2d 50 (1981). Nothing suggests that the trial court abused its discretion in ruling in response to the motion in limine that the defendant's prior robbery conviction would be admissible into evidence in this burglary trial. In addition, the trial court sua sponte gave a written instruction to the jury limiting its use of such evidence.

Having ruled on the basis stated, it is unnecessary to address the State's further argument to the effect that the defendant waived any error in the trial court's ruling by himself bringing out evidence of his prior offense.

Affirmed.

CORBETT and SCHOLFIELD, JJ., concur.

Reconsideration denied August 9, 1983.

Review by Supreme Court pending March 15, 1984.