[No. 49311–1. En Banc. February 2, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBBIE
W. BURTON, *Petitioner*.

BRACHTENBACH, DIMMICK, and ROSELLINI, JJ., dissent by separate opinions.

*Kurtz & Hurley,* by *Susan L. Hahn,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert Hackett, Deputy,* for respondent.

STAFFORD, J.—Petitioner, Robbie Burton, asks this court to reverse a Court of Appeals decision which held that his prior misdemeanor convictions for petit larceny and shoplifting were admissible to impeach his credibility pursuant to ER 609(a)(2). We reverse the Court of Appeals.

On February 25, 1981, the ARCO mini–mart in Union Gap, Washington was robbed at gunpoint. The cashier, Sherry Fryar, was the only clerk on duty and the sole eyewitness to the robbery. She testified that about 8:30 p.m. on February 25, a man came into the store, looked at some magazines, commented that he had "forgotten his money" and left. Approximately 30 minutes later, the man returned, pointed a gun at her and demanded that she give him the money in the cash register. She complied with his request. Fryar described the robber as approximately 5 feet 8 inches tall, with dishwater blond hair and an acne–scarred face. On April 9, 1981, Fryar selected Burton's photograph from a montage and identified him as the man who had robbed the mini–mart.

On April 24, 1981, Burton checked into the Tapadera Motor Inn in Union Gap, located immediately adjacent to

the ARCO mini–mart. While checking into the motel, he was observed by Fryar, who worked full time as a maid at the motel in addition to her part–time job at the mini–mart. Upon recognizing Burton as the man she had identified from the photo montage, Fryar contacted the local police. Burton was subsequently arrested in his motel room and charged with the February 25 armed robbery of the mini–mart.

At trial, prior to presenting its case in chief, defense counsel made a motion in limine to preclude the State from impeaching Burton's testimony with evidence of his three prior misdemeanor convictions for petit larceny in 1975, shoplifting in 1976, and giving false information to a police officer in 1977. The trial court denied the motion and held that each of these crimes involved "dishonesty or false statement" within the context of ER 609(a)(2) and therefore were admissible for impeachment purposes.

Despite this ruling, Burton took the stand to testify regarding his alibi defense. He stated that he had spent the evening of February 25, 1981 at the home of his friends Jim and Kathy Layne of Yakima. He explained that his common law wife had left on February 4 for Minnesota and that since her departure he had spent most of his time at the Laynes' home. On cross examination, the State brought out Burton's prior convictions. The Laynes testified that although they could not state with absolute certainty that Burton had been with them during the evening of February 25, he had been visiting them almost every evening since his wife's departure and, thus, was very likely with them that evening as well.

The jury found Burton guilty of first degree robbery. The Court of Appeals affirmed, holding that Burton's misdemeanor convictions were all crimes involving dishonesty under ER 609(a)(2). We granted the petition for review to address this important issue.

In 1979, this court adopted ER 609, superseding former

RCW 10.52.030.[1] *See* 91 Wn.2d 1149 (1978). ER 609 was taken word for word from the federal Rule of Evidence 609. *See* Fed. R. Evid. 609, 28 U.S.C. ER 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) *involved dishonesty or false statement,* regardless of the punishment.

(Italics ours.) While ER 609(a)(1) grants discretionary authority to admit prior *felony* convictions, ER 609(a)(2) *requires* the admission of all prior convictions, felony or misdemeanor, which involve a crime of "dishonesty *or* false statement". Because Burton's three prior convictions were all misdemeanor convictions, they were admissible only if the crimes "involved dishonesty *or* false statement" under ER 609(a)(2). Thus the question before this court is whether petit larceny and shoplifting are crimes of "dishonesty".[2] For the reasons that follow we find that they are not.

Prior to 1979 we consistently recognized that a defend-

---

[1]RCW 10.52.030. "Convict as witness. Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross–examination, upon which he shall answer any proper question relevant to that inquiry, and the party cross–examining shall not be concluded by his answer thereto."

[2]We note that petitioner apparently does not dispute that a conviction for giving false information to a police officer under RCW 9A.76.020 is a crime involving dishonesty or false statement under ER 609(a)(2). In his petition for review, however, petitioner notes that he was never actually convicted of the crime as the case was dismissed prior to conviction. If, in fact, petitioner was never convicted, then clearly this misdemeanor charge is inadmissible for impeachment purposes under ER 609(a)(2). If, however, petitioner was actually convicted, then as a crime which involves "false statement" in the form of lying, the prior conviction would be admissible under ER 609(a)(2).

ant's past convictions were relevant to his or her credibility as a witness. *See State v. Ruzicka*, 89 Wn.2d 217, 226, 570 P.2d 1208 (1977). Further, a trial judge had no discretion to refuse evidence of a prior conviction; admission was mandatory, regardless of whether the prior conviction was for a felony or misdemeanor offense. *See* former RCW 10.52.030, footnote 1 above; *see also State v. Ruzicka, supra; State v. Robinson*, 75 Wn.2d 230, 450 P.2d 180 (1969).

In *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980), we recognized the significant changes brought about by the adoption of ER 609. Unlike prior Washington law, ER 609(a) requires that the trial court look to the nature of the prior conviction before determining its admissibility. Under ER 609(a)(2), crimes which involve "dishonesty or false statement" must be admitted, whether felony *or* misdemeanor. The trial court has no discretion. Evidence of prior *felony* convictions which do not involve dishonesty or false statement, however, are admissible under ER 609(a)(1), but only if the trial court first determines that the probative value of the evidence outweighs its prejudicial effect. *State v. Alexis, supra.*

Although this case presents the first opportunity for us to determine which crimes are crimes of "dishonesty", Division One of the Court of Appeals recently held in a well reasoned opinion that the misdemeanor crime of receiving stolen property is not a crime involving dishonesty within the meaning of ER 609(a)(2). *State v. Zibell*, 32 Wn. App. 158, 646 P.2d 154, *review denied*, 97 Wn.2d 1039 (1982). We further note that Division One has also determined that felony robbery is not a crime involving dishonesty under ER 609(a)(2). *State v. Moore*, 29 Wn. App. 354, 628 P.2d 522, *review denied*, 96 Wn.2d 1003 (1981) (*Moore* I); *State v. Moore*, 33 Wn. App. 55, 651 P.2d 765 (1982) (*Moore* II). *But see State v. Anderson*, 31 Wn. App. 352, 359–60, 641 P.2d 728 (1982); *State v. Turner*, 35 Wn. App. 192, 665 P.2d 923 (1983).[3]

---

[3]We note a different panel of the Court of Appeals, Division One, recently

The Court of Appeals in the instant case adopted a broad definition of dishonesty, expressly rejecting the approach taken by Division One in *Zibell* and *Moore* I and II. Rather, the Court of Appeals, Division Three, adopted the view that stealing is an act of deceit which impinges upon one's reputation for honesty. "To steal is dishonest. We need not trace federal legislative history to construe 'dishonesty'." *State v. Burton,* 33 Wn. App. 417, 420, 655 P.2d 259 (1982).

We do not agree with the Court of Appeals overly broad definition of the word "dishonesty"; it is inconsistent both with our intent in adopting ER 609(a)(2) and with the vast majority of federal case law interpreting Fed. R. Evid. 609(a)(2), 28 U.S.C.A. 609. Contrary to the Court of Appeals, we find the word "dishonesty" must be defined in the context of the rule. Because the language of ER 609(a)(2) is taken *verbatim* from its federal counterpart, *see* Comment, ER 609, 91 Wn.2d 1150 (1978) and Fed. R. Evid. 609, we find that it is proper to look to the legislative history surrounding the adoption of the federal rule as well as the federal case law developed since its adoption to define the category of crimes included under ER 609(a)(2).

The Senate Judiciary Committee Report explained the intended meaning of the phrase as follows:

> By that phrase, the committee means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other

---

held that despite their holding in *State v. Zibell,* 32 Wn. App. 158, 164, 646 P.2d 154 (1982), robbery is a crime of "dishonesty" within the meaning of ER 609(a)(2). *State v. Turner,* 35 Wn. App. 192, 665 P.2d 923 (1983). To support its holding, the Court of Appeals cites several state court decisions which have found crimes of theft admissible as crimes involving "dishonesty". We note, however, that of these states, Alaska, Kansas and Illinois have adopted versions of rule 609(a) that differ significantly from Fed. R. Evid. 609(a). We further note that the only federal authority cited, *United States v. Bianco,* 419 F. Supp. 507 (E.D. Pa. 1976), *aff'd,* 547 F.2d 1164 (3d Cir. 1977), relied solely on cases decided *prior to the adoption* of the federal Rules of Evidence. The overwhelming weight of federal authority as set forth in our opinion clearly supports a narrow definition of the term "dishonesty" as used in Fed. R. Evid. 609(a)(2) and the identical language of ER 609(a)(2). Thus, we must conclude that *Zibell* is the better view.

offense, in *the nature of crimen falsi* the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully.

(Italics ours.) S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7061. *See also* Comment, Fed. R. Evid. 609(a). This is essentially the same definition as that given by the House–Senate Conference Committee. H.R. Conf. Rep. No. 1597, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7098, 7103.

At common law, the term "crimen falsi" referred to "crimes of infamy". *State v. Payne,* 6 Wash. 563, 34 P. 317 (1893).

> [P]ersons are rendered infamous . . . by having been convicted of forgery, perjury, subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the absence of a witness, or other conspiracy, to accuse one of a crime, and barratry. And from these decisions it may be deduced, that the "crimen falsi" of the Common Law not only involves the charge of falsehood, but also is one which may injuriously affect the administration of justice, by the introduction of falsehood and fraud.

(Footnotes omitted.) 2 J. Wigmore, *Evidence* § 520, at 730 (rev. 1979). *Accord,* Black's Law Dictionary 446–47 (4th rev. ed. 1968). We have previously held that "crimen falsi" does not include the offense of simple petit larceny. *State v. Payne, supra.* We adhere to this definition and find that crimes of "dishonesty" include only those crimes which contain elements in the nature of *crimen falsi* and which bear *directly* on a defendant's propensity for truthfulness.

The purpose of allowing impeachment by prior conviction evidence is to shed light on the defendant's *credibility* as a witness. Therefore, prior convictions admitted for impeachment purposes must have some relevance to the defendant's ability to tell the truth. *United States v. Smith,* 551 F.2d 348 (D.C. Cir. 1976). *See also* Note, *Impeachment Under Rule 609(a): Suggestions for Confin-*

*ing and Guiding Trial Court Discretion,* 71 Nw. U. L. Rev. 634 (1976). Simply because a defendant has committed a crime in the past does not mean the defendant will lie when testifying. We therefore reject any suggestion that lying is an integral facet of the criminal personality, and thus all prior convictions should be admissible.

The overwhelming majority of federal circuit court cases decided after the 1975 adoption of Fed. R. Evid. 609 have adopted a similar narrow interpretation of subsection (a)(2). The majority of these cases involve crimes in the nature of theft, such as simple larceny, burglary, and shoplifting. These particular crimes have generated a great deal of confusion and controversy because the term "dishonesty" in its common meaning connotes a disposition to lie, cheat or defraud, arguably encompassing crimes of theft. *See* Note, *An Analysis of the Phrase "Dishonesty or False Statement" as Used in Rule 609,* 32 Okla. L. Rev. 427, 430 (1979). The matter is further complicated by noting that some crimes of theft, such as embezzlement, involve an element of deceit or untruthfulness and thus are admissible under ER 609(a)(2).

With the District of Columbia Circuit Court of Appeals leading the way in 1976, the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth and Tenth Circuits have all expressly held that Fed. R. Evid. 609(a)(2) encompasses only those crimes which include an element of deceit, untruthfulness or false statement; thus excluding general crimes of theft. *See United States v. Smith,* 551 F.2d 348 (D.C. Cir. 1976); *United States v. Grandmont,* 680 F.2d 867 (1st Cir. 1982); *United States v. Hawley,* 554 F.2d 50 (2d Cir. 1977); *Government of V.I. v. Toto,* 529 F.2d 278 (3d Cir. 1976); *United States v. Cunningham,* 638 F.2d 696 (4th Cir. 1981); *United States v. Ashley,* 569 F.2d 975 (5th Cir. 1978); *United States v. Mahone,* 537 F.2d 922 (7th Cir. 1976) (in dictum only); *United States v. Hastings,* 577 F.2d 38 (8th Cir. 1978); *United States v. Dixon,* 547 F.2d 1079 (9th Cir. 1976); *United States v. Seamster,* 568 F.2d 188 (10th Cir. 1978). Some of the federal courts have specifi-

cally found petit larceny and shoplifting inadmissible under Fed. R. Evid. 609(a)(2). *See United States v. Fearwell,* 595 F.2d 771 (D.C. Cir. 1978) (attempted petit larceny inadmissible); *United States v. Ashley, supra* (shoplifting conviction inadmissible); *United States v. Ortega,* 561 F.2d 803 (9th Cir. 1977) (shoplifting inadmissible). The Sixth and Eleventh Circuits have not yet defined the category of crimes admissible under ER 609(a)(2).

We find the view of the overwhelming majority of federal courts to be the proper position. In choosing to adopt the federal version of rule 609 verbatim, we indicated our acceptance of the interpretation given to that rule by federal courts. *See* Comment, ER 609, 91 Wn.2d 1150 (1978). Moreover, if "dishonesty" were defined broadly to include most any crime, then ER 609(a)(1) becomes superfluous. Most felony and misdemeanor crimes would become automatically admissible under ER 609(a)(2), thereby eliminating the need for discretionary authority under ER 609(a)(1). This interpretation would strain the intent of Congress and of this court in adopting ER 609. *See State v. Zibell, supra; United States v. Smith, supra.*

The admission of prior conviction evidence by its very nature is highly prejudicial because of its inherent implication that "once a criminal, always a criminal." Moreover, the admission of prior conviction evidence adversely affects a defendant's right to testify in his own defense. This right is of constitutional importance. U.S. Const. amend. 6; Const. art. 1, § 22. *See State v. Hudlow,* 99 Wn.2d 1, 15, 659 P.2d 514 (1983). A jury has the need to know a defendant's side of the story. The lack of discretion under ER 609(a)(2) presents a defendant witness with a Hobson's choice: either refuse to testify and risk the effect of not presenting one's side of the story or testify and risk the effect of the inherent prejudice associated with prior conviction evidence. *See* Note, *To Take the Stand or Not To Take the Stand: The Dilemma of the Defendant With a Criminal Record,* 4 Colum. J.L. & Soc. Probs. 215, 218 (1968). *See also* Spector, *Rule 609: A Last Plea for Its*

*Withdrawal,* 32 Okla. L. Rev. 334 (1979). For these reasons, we prefer to adopt a restrictive approach to admissibility of evidence under ER 609(a)(2). Only prior conviction evidence which has a direct bearing on a defendant's ability to testify truthfully will be admissible to impeach a defendant's credibility as a witness. Therefore, the category of crimes involving "dishonesty" is defined to include only those crimes having elements in the nature of *crimen falsi,* the commission of which involves some element of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully.

While in a broad sense theft is always dishonest, crimes of theft in general do not contain the requisite element of untruthfulness and thus, misdemeanor crimes of theft in general are inadmissible under ER 609(a)(2) unless there is some element of fraud or deceit (such as unlawful issuance of bank checks, RCW 9A.56.060). The trial court therefore erred in admitting Burton's prior convictions for petit larceny[4] and shoplifting.[5]

At trial, the State relied heavily on the eyewitness testimony of Sherry Fryar. Burton's alibi defense was his only rebuttal to the State's evidence. Therefore, Burton's credibility as a witness was very much at issue. Prior to the admission of the prior conviction evidence, the jury had only Fryar's word against Burton's. With the impeachment of Burton's testimony by the use of his prior misdemeanor convictions, the balance was tipped in favor of the State. We cannot determine what effect this had on the jury's verdict, nor can we consider the error harmless under either the constitutional standard of *State v. Evans,* 96 Wn.2d 1, 633 P.2d 83 (1981) or the nonconstitutional standard of *State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980).

---

[4]*See* former RCW 9.54.090 (repealed 1976).

[5]*See* former RCW 9.78.010 (repealed 1976).

We therefore reverse the Court of Appeals and remand for a new trial.

WILLIAMS, C.J., and UTTER, DOLLIVER, DORE, and PEARSON, JJ., concur.

DIMMICK, J. (concurring in part, dissenting in part)—The majority holds inadmissible for purposes of impeachment petitioner's prior misdemeanor convictions for petit larceny and shoplifting. In so doing, the court suggests that prior convictions can be categorized as crimes of "dishonesty or false statement" merely by looking at the name of the crime. I disagree with this simplistic approach to ER 609(a). As the United States Court of Appeals for the District of Columbia acknowledged:

> Shoplifting may or may not be probative of a lack of veracity, depending on the nature and circumstances of the crime. It can range from an impulsive "grab and run" in full view of store officials, to a discreet slipping of merchandise into a handbag, or even to an outright lie about one's identity or ownership of a credit card. Without evidence of the nature of the crime at issue here or its surrounding circumstances, the district court simply could not determine how probative (if at all) Crawford's shoplifting conviction may have been on her propensity to tell the truth . . .

*United States v. Crawford,* 613 F.2d 1045, 1052 (D.C. Cir. 1979). If the purpose of ER 609(a) is to identify those witnesses who demonstrate a disregard for truthfulness, then fulfillment of that purpose necessitates an inquiry into the circumstances of the prior conviction and the commission of the underlying crime, regardless of the label attached to the crime.

Several federal courts of appeals have found that federal Rule of Evidence 609(a) requires some investigation into the nature and circumstances of a prior conviction as a prerequisite to its admissibility for impeachment purposes.

*United States v. Crawford, supra. See United States v. Ortiz,* 553 F.2d 782 (2d Cir. 1977); *United States v. Mahone,* 537 F.2d 922 (7th Cir. 1976) (dicta). Washington's ER 609(a) should also require the trial court to determine whether a prior conviction reveals the witness' regard for truthtelling under circumstances that could give rise to criminal sanctions for perpetration of a falsehood. I do not intend to suggest, however, that the facts and circumstances of every misdemeanor must be investigated by the trial court in each ER 609(a) proceeding. Some misdemeanor crimes will necessarily involve "dishonesty or false statement." Therefore, whether the trial court must make an inquiry into the circumstances of the prior crime is a decision resting in the trial court's sound discretion.

Although asserting at page 10 that "crimes of theft *in general* do not contain the requisite element of untruthfulness" (italics mine), the majority categorically denies admission of petitioner's prior misdemeanor convictions for shoplifting and petit larceny without knowing the circumstances of his commission of either. If the majority thus intends to create a per se rule of inadmissibility for petit larceny and shoplifting, I strongly disagree. If the intention is to provide a definition of the requisite "dishonesty or false statement" to guide the lower courts, I agree that such a definition is needed. I doubt, however, that the majority's per se rule sheds much light on that critical phrase. I would remand to the trial court for a proper inquiry into the circumstances of the misdemeanors in question.

ROSELLINI, J., concurs with DIMMICK, J.

BRACHTENBACH, J. (dissenting)—I dissent. The majority holds that Burton's convictions for petit larceny and shoplifting do not involve "dishonesty or false statement," and therefore are not automatically admissible to impeach his testimony pursuant to ER 609(a)(2). This holding ignores the plain language of the rule. The term "dishonest" implies the act or practice of telling a lie, or of cheating,

deceiving, and stealing. *Webster's New World Dictionary* 419 (College ed. 1968). Obviously, the crimes of larceny and shoplifting fall within this definition. Accordingly, Burton's convictions were admissible under ER 609(a)(2), and the Court of Appeals should be affirmed.

The majority argues in support of its "restrictive approach" to admissibility of evidence under ER 609(a)(2) that the rule presents the defendant in a criminal action with a Hobson's choice:[6] either refuse to testify and risk the effect of not presenting one's side of the story, or testify and risk the inherent prejudice associated with prior conviction evidence. I share the majority's concern. However, I do not believe that the solution to this problem is to ignore the plain language of the rule. Instead, research into the history of impeachment by prior conviction, and the consequences of such impeachment to the defendant with a prior record, convinces me that it is time to abandon the procedure, with very limited exceptions.

## I

The historical development of ER 609 may be traced into the antiquity of the common law. In 17th century England, a person who had been convicted of crime was disqualified as a witness, a disqualification thought to have originated as an additional punishment for the crime. Ashcraft, *Evidence of Former Convictions,* 41 Chicago B. Rec. 303, 304 (1960). Because the disqualification had the effect of also punishing innocent persons in need of the convict's testimony, however, jurists soon based it on a different theory: that the convict was of such poor moral character that he could not be expected to tell the truth. 2 J. Wigmore, *Evidence* § 519, at 726 (rev. 1979).

The common law rule disqualifying convicts as witnesses

---

[6]"Hobson's choice" is defined as the necessity of accepting one of two or more equally objectionable things. The term originated as a reference to the practice of Thomas Hobson, a 17th century English liveryman, of requiring every customer to take the horse which stood nearest the door. *Webster's Third New International Dictionary* 1076 (1976).

persisted into the early 18th century, when it met the determined resistance of Jeremy Bentham. In an oft–quoted passage, Bentham exposed the illogic of the rule:

> Take homicide in the way of duelling. Two men quarrel; one of them calls the other a liar. So highly does he prize the reputation of veracity, that, rather than suffer a stain to remain upon it, he determines to risk his life, challenges his adversary to fight, and kills him. Jurisprudence, in its sapience, knowing no difference between homicide by consent, by which no other human being is put in fear—and homicide in pursuit of a scheme of highway robbery, of nocturnal housebreaking, by which every man who has a life is put in fear of it,—has made the one and the other murder, and consequently felony. The man prefers death to the imputation of a lie,—and the inference of the law is, that he cannot open his mouth but lies will issue from it. Such are the inconsistencies which are unavoidable in the application of any rule which takes improbity for a ground of exclusion.

J. Bentham, 7 *Rationale of Judicial Evidence* 406 (Bowring's ed. 1827), *quoted in* 2 J. Wigmore, *Evidence* § 519, at 728 (rev. 1979).

Wigmore credits Bentham with turning the tide of legal thought against the common law disqualification of convicts. By 1843, England had abolished the disqualification by statute. 2 J. Wigmore, *Evidence* § 524, at 734 (rev. 1979). One by one, the states of the United States followed suit.[7]

The same statutes which abolished the convict's testimonial incompetency generally provided that the convict could be impeached with evidence of his prior convictions. RCW 5.60.040, as originally enacted in 1854, is illustrative:

> No person offered as a witness shall be excluded from giving evidence, by reason of conviction for crime, *but such conviction may be shown to effect his credibility:*

---

[7]Weinstein states that all state jurisdictions had abolished use of a felony conviction disqualify by 1953; however, in a few jurisdictions conviction of perjury may still render a witness incompetent to testify, at least in a civil case. 3 J. Weinstein & M. Berger, *Evidence* ¶ 601[03], at 601–19 (1982).

*Provided,* That no person who shall have been convicted of the crime of perjury, shall be a competent witness in any case, unless such conviction shall have been reversed or unless he shall have received a pardon.

(Italics mine.) Laws of 1854, p. 186, § 292.

Thus, the modern rule permitting impeachment by prior conviction had its genesis in the common law disqualification of convicts. However, it is important to note that the common law disqualification of convicts had no application to the defendant in a criminal action, who was already incompetent to testify under the common law. Ashcraft, *Evidence of Former Convictions,* 41 Chicago B. Rec. 303 (1960). In fact, England waited some 55 years after establishing the competency of convicts before finally abolishing the defendant's disqualification in the Criminal Evidence Act of 1898. *Seventy–Two Years at the Bar; a Memoir of Sir Harry Bodkin Poland* 26 (Bowen–Rowlands ed. 1924), *quoted in* 2 J. Wigmore, *Evidence* § 576, at 817 (rev. 1979). Accordingly, there is no precedent at common law for impeachment by prior conviction insofar as the defendant in a criminal action is concerned. Ashcraft, at 304.

England immediately recognized the need to shield the defendant in a criminal action from impeachment by prior conviction. The Criminal Evidence Act of 1898, which established the competency of the defendant, also provided that the defendant could not be asked or required to answer any question tending to show that he had committed, been charged with, or been convicted of any crime other than that with which he was then charged. The act provided exceptions to this rule only where the prior conviction evidence was admissible to show guilt, where the defendant had given evidence of his own good character or impugned the character of the prosecutor or prosecution witnesses, and where the defendant had given evidence against a codefendant. Criminal Evidence Act, 1898, 61 & 62 Vict., ch. 36, § 1(f).

Early attempts to provide similar protection to defendants in this country were unsuccessful. Both the Model

Code of Evidence and the Uniform Rules of Evidence prohibited the introduction of prior conviction evidence to impeach the accused, except where the accused had first introduced evidence to support his own credibility. Moreover, even where impeachment by prior conviction was permitted, only convictions for crimes involving dishonesty or false statement were admissible. Model Code of Evidence, Rule 106 (1942); Unif. R. Evid. 21 (1953). The call for procedural reform was heeded only in Kansas, which adopted Uniform Rule 21. Kan. Stat. Ann. § 60–421 (1976); Spector, *Rule 609: A Last Plea for Its Withdrawal,* 32 Okla. L. Rev. 334, 337 n.20 (1979).

The first significant attempt to limit impeachment by prior conviction came in *Luck v. United States,* 348 F.2d 763 (D.C. Cir. 1965). At the time *Luck* was written, the relevant District of Columbia statute, 14 D.C. Code § 305 (1967), provided that a witness' prior conviction "*may be given in evidence to affect his credibility as a witness*". *Luck,* at 768 n.6. Seizing upon the permissive word "may," the *Luck* court interpreted the statute as placing the admission of prior convictions within the discretion of the trial court:

> There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field.

(Footnotes omitted.) *Luck,* at 768.

In 1970, Congress eliminated the *Luck* doctrine in the District of Columbia by the simple expedient of amending 14 D.C. Code § 305 to read that, for the purpose of attacking the credibility of a witness, evidence of prior convictions "shall" be admitted if offered. Reform and Criminal Proce-

dure Act of 1970, Pub. L. No. 91–358, § 133, 84 Stat. 473. However, the concept of permitting the trial court to determine whether the prejudicial effect of admitting the prior convictions outweighed their probative value survived, and was ultimately incorporated into Congress' final version of Fed. R. Evid. 609:

> *(a) General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant,* or (2) involved dishonesty or false statement, regardless of the punishment.

(Italics mine.)

Significantly, no judicial discretion was granted with respect to prior convictions for crimes involving dishonesty or false statement. The House–Senate Conference Committee, which drafted the final version of Fed. R. Evid. 609, reasoned that "[s]uch convictions are peculiarly probative of credibility and, under this rule, are always to be admitted." H.R. Conf. Rep. No. 1597, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7098, 7103. By creating a distinction between crimes of "dishonesty and false statement" and other crimes, Congress paved the way for decisions like that of the majority today, which stretches the concept of "dishonesty" to the breaking point in order to hold that convictions for larceny and shoplifting are not automatically admissible pursuant to ER 609(a)(2).

This court adopted ER 609 in 1979. *See* 91 Wn.2d 1117, 1149 (1978).

## II

The basic assumption underlying ER 609 is that prior convictions are relevant to witness credibility. This assumption is in turn based on another, twofold assump-

tion: (1) that a person with a criminal past has a bad general character and (2) that a person with a bad general character is the sort of person who would disregard the obligation to testify truthfully. 3 J. Weinstein & M. Berger, *Evidence* ¶ 609[02], at 609–54 (1982).

I question the validity of these assumptions. To begin with, ER 609 permits the trial court to admit prior convictions of *any* felony. Yet, many felonies, particularly violent felonies such as murder, assault and rape, have no rational bearing on veracity. Note, *To Take the Stand or Not To Take the Stand: The Dilemma of a Defendant With a Criminal Record,* 4 Colum. J.L. & Soc. Probs. 215, 217 (1968). Moreover, ER 609 permits the assumed unreliability of a witness to be predicated on the basis of a single act, which is hardly a scientific method of determining character. *See* Ladd, *Credibility Tests—Current Trends,* 89 U. Pa. L. Rev. 166, 176–78 (1940). Indeed, as one commentator has noted, current psychological theory has retreated from the notion of general character traits; experiments have revealed that how a person behaves depends on the specific situation in which he finds himself. For example, it is argued that a prior conviction for perjury has value as a predictor of willingness to lie in a given situation only if all surrounding facts and circumstances are identical. Spector, *Rule 609: A Last Plea for Its Withdrawal,* 32 Okla. L. Rev. 334, 349–52 (1979).

Furthermore, even if prior convictions were relevant to credibility, I question whether ER 609 can be applied to the defendant in a criminal action without seriously prejudicing his right to a fair trial. Commentators have identified two ways in which prior conviction evidence may prejudice the jury. First, the jury may conclude that the defendant is a "bad person" who deserves to be sent to prison whether guilty of the crime presently charged or not. Second, the jury may perceive the prior convictions as proof of the defendant's general propensity to commit crimes, making it more likely that the defendant committed the crime charged. Note, *To Take the Stand or Not To Take the*

*Stand: The Dilemma of the Defendant With a Criminal Record,* 4 Colum. J.L. & Soc. Probs. 215 (1968). Of course, these are the same dangers underlying the propensity rule of ER 404(b), which provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. 3 J. Weinstein & M. Berger, *Evidence* ¶ 609[02], at 609–56 (1982).

Statistical studies confirm that prior conviction evidence significantly increases the chances of a guilty verdict. Based upon a review of actual criminal trials, one study concluded that the acquittal rate for a defendant without a record was 42 percent, but only 25 percent for a defendant with a record. H. Kalven & H. Zeisel, *The American Jury* 161 (1966). Other studies of both actual and simulated trials also reach the conclusion that evidence of a prior record increases the conviction rate. *See* Doob & Kirshenbaum, *Some Empirical Evidence on the Effect of s. 12 of the Canada Evidence Act Upon an Accused,* 15 Crim. L.Q. 88, 93 (1972); Hans & Doob, *Section 12 of the Canada Evidence Act and the Deliberations of Simulated Juries,* 18 Crim. L.Q. 235, 243 (1976); Myers, *Rule Departures and Making Law: Juries and Their Verdicts,* 13 Law & Soc'y 781, 792 (1979); L.S.E. Jury Project, *Juries and the Rules of Evidence,* 1973 Crim. L. Rev. 208, 222.

It may be argued that prejudice to the defendant may be eliminated by instructing the jury to utilize prior conviction evidence solely for the purpose of evaluating the defendant's credibility. However, surveys substantiate Judge Hand's complaint that limiting instructions are "the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.), *cert. denied,* 285 U.S. 556 (1932). The Columbia Journal of Law and Social Problems conducted a random survey by distributing a questionnaire nationally to trial judges and criminal defense attorneys. When asked whether juries were able to follow an instruction to consider prior conviction evidence

only for the purpose of evaluating the defendant's credibility, 98 percent of the attorneys and 43 percent of the judges gave negative answers. Note, *To Take the Stand or Not To Take the Stand: The Dilemma of the Defendant With a Criminal Record,* 4 Colum. J.L. & Soc. Probs. 215, 218 (1968). Jury examinations conducted by the University of Chicago indicated that jurors were afflicted with an

> almost universal inability and/or unwillingness either to understand or follow the court's instruction on the use of defendant's prior criminal record for impeachment purposes. The jurors almost universally used defendant's record to conclude that he was a bad man and hence was more likely than not guilty of the crime for which he was then standing trial.

Letter from Dale W. Broeder, Associate Professor, the University of Nebraska College of Law, to Yale Law Journal (March 14, 1960), *quoted in* Note, *Other Crimes Evidence at Trial: Of Balancing and Other Matters,* 70 Yale L.J. 763, 777 (1961).

Of course, the defendant with a prior record may invoke his Fifth Amendment privilege against self–incrimination and refuse to testify, thereby eliminating the State's opportunity to impeach him with his prior convictions. Not too surprisingly, statistics show that defendants with prior records "take the Fifth" more frequently than defendants without prior records. *See* H. Kalven & H. Zeisel, *The American Jury* 146 (1966). However, the defendant also jeopardizes his chances of acquittal by refusing to testify. He may be the only person with access to information which could exonerate him, such as an alibi or an explanation of his behavior consistent with innocence. Moreover, common sense suggests that a jury may infer guilt from the defendant's silence. One Gallup poll showed that 71 percent of those questioned believed that the use of the privilege against self–incrimination indicated guilt. L. Mayers, *Shall We Amend the Fifth Amendment?* 21 (1959). In the Columbia Journal of Law and Social Problems survey, 94 percent of the attorneys questioned believed that jurors

noticed and inferred guilt from the defendant's silence despite the fact that no comment may be made to the jury on the defendant's failure to testify. Eighty–eight percent of the attorneys and 89 percent of the judges questioned believed that there was a greater chance of acquittal if the defendant testified. Note, *To Take the Stand or Not To Take the Stand: The Dilemma of the Defendant With a Criminal Record,* 4 Colum. J.L. & Soc. Probs. 215, 221 (1968).

In sum, the defendant with a prior record is forced by ER 609 into a "choice between Scylla and Charybdis": if he takes the stand, he faces impeachment by prior conviction and the consequent danger that the jurors will disregard instructions and regard his convictions as evidence of guilt; and if he declines to testify, jurors are likely to infer from his silence that he is guilty. 3 J. Weinstein & M. Berger, *Evidence* ¶ 609[02], at 609–57 (1982).

## III

Four states have recognized this dilemma and adopted statutes or rules which protect the right of the defendant in a criminal action to a fair trial: Kansas, Hawaii, Georgia, and Montana. The texts provide in relevant part:

> Limitation on evidence of conviction of crime as affecting credibility. Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility.

Kan. Stat. Ann. § 60–421 (1976).

> (a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is inadmissible except when the crime is one involving dishonesty. However, in a criminal case where the defendant takes the stand, the defendant shall not be questioned or evidence introduced as to whether

he has been convicted of a crime, for the sole purpose of attacking credibility, unless the defendant has himself introduced testimony for the purpose of establishing his credibility as a witness, in which case he shall be treated as any other witness as provided in this rule.

Hawaii R. Evid. 609.

(b) If a defendant in a criminal case wishes to testify and announces in open court his intention to do so, he may so testify in his own behalf. If a defendant testifies, he shall be sworn as any other witness and may be examined and cross–examined as any other witness, except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue.

Ga. Code Ann. § 38–415 (Supp. 1982).

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is not admissible.

Mont. R. Evid. 609.

Thus, in Kansas, Hawaii and Georgia, the state may not introduce into evidence *any* prior conviction for the purpose of impeaching the accused, unless the accused "opens the door" by introducing evidence to support his own credibility. Montana takes this proscription one step further by providing that prior conviction evidence is inadmissible to impeach the credibility of any witness.[8]

By abolishing impeachment by prior conviction, these four states have protected the right of the defendant to a fair trial in two ways. First, they have eliminated the possibility that the jury will misuse prior conviction evidence by viewing it as evidence of guilt, or by deciding that the defendant is a "bad person" who deserves to go to prison

---

[8]Montana's ban on the use of prior convictions to impeach is not as absolute as it appears, however. In *State v. Austad,* 197 Mont. 70, 641 P.2d 1373, 1384 (1982), the Montana Supreme Court held that where a criminal defendant testified he had never committed burglary, rule 609 did not prevent the State from introducing his prior conviction for burglary to impeach. *Austad* thus brings the Montana rule into line with the Kansas, Hawaii and Georgia rules, all of which permit impeachment by prior conviction where the defendant introduces evidence to support his credibility.

regardless of guilt. Second, by eliminating this potential prejudice, these states have encouraged the defendant to exercise his constitutional right to testify in his own defense. On the other hand, the cost to the State of abandoning impeachment by prior conviction is small. The jury already has ample reason to be skeptical of a defendant's testimony. A person on trial for life or liberty has a strong motivation to lie; indeed, a defendant with an unblemished past has a greater incentive to perjure himself than a convict who is already familiar with prison life and has no reputation or honor to lose. Ashcraft, *Evidence of Former Convictions,* 41 Chicago B. Rec. 303, 305 (1968). Moreover, jurors are generally aware that the defendant is on trial because law enforcement believes he is guilty. This awareness will also cause jurors to view critically the defendant's testimony. Nichol, *Prior Crime Impeachment of Criminal Defendants: A Constitutional Analysis of Rule 609,* 82 W. Va. L. Rev. 391, 408–09 (1980).

Therefore, I conclude that our present ER 609 should be abandoned and replaced with a rule modeled after the Kansas, Hawaii, Georgia and Montana rules. At a minimum, this new rule should provide that no prior convictions shall be admissible to impeach the credibility of a defendant in a criminal action, unless the defendant has first introduced evidence solely for the purpose of supporting his credibility. *See* Kan. Stat. Ann. § 60–421 (1976). I suggest we go one step further and adopt Montana's proscription against impeaching *any* witness with *any* prior conviction. This would relieve our courts of the pointless exercise of attempting to determine which crimes involve "dishonesty or false statement," or otherwise impugn the credibility of the witness. I would, however, add to the Montana rule a clause expressly providing that any prior conviction could be introduced to impeach the testimony of a witness who had first introduced evidence to support his own credibility.

In the meantime, since I disagree with the majority's holding that petit larceny and shoplifting are not crimes

24

involving dishonesty or false statement within the meaning of the present ER 609, I dissent.