[No. 11011–0–I.   Division One.   September 27, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. ISAAC
MOORE, *Appellant.*

*Michael Filipovic* and *Robert Boruchowitz* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

RINGOLD, J.—Isaac J. Moore was convicted by a jury of first degree robbery. His original appeal to this court resulted in an opinion remanding for a new hearing on the admissibility of his prior robbery conviction for impeachment purposes. *State v. Moore,* 29 Wn. App. 354, 628 P.2d 522 (1981). On remand, the trial court reaffirmed its original conclusion that the prior robbery conviction was admissible and therefore denied Moore's request for a new trial. We now reverse and remand for a new trial.

The following facts are taken from our prior opinion at 29 Wn. App. 354, 356–57, 362–63:

> At about 10:30 p.m. on January 24, 1980, a man robbed a desk clerk at the Seattle depot of the Trailways Bus Company. The robber, using what appeared to be a gun, took cash and a bus ticket for Salt Lake City. The victim contacted the police and described his assailant as a black man, 5 feet 11 inches tall, wearing a yellow or tan leather jacket.
>
> The next day at about 11 a.m., Isaac Moore presented a ticket for Salt Lake City at the Tacoma Trailways depot and checked two suitcases for Portland. The ticket had the same number as the one stolen in Seattle the night before.
>
> Officer Lynch of the Tacoma Police Department received a call reporting this incident. He confirmed the

Seattle robbery and obtained a description that matched that of the suspect. Lynch arranged for surveillance of the bus station, but the Salt Lake City bus departed at 1:25 p.m. without Moore.

Lynch then went to the storage room and took the suitcases that Moore had previously checked. . . . After Lynch left the bus depot, Moore returned and attempted to transfer his ticket to Greyhound. The police were notified and Moore was arrested at about 2:30 or 2:45 p.m.

. . .

At trial, Moore made a motion in limine to bar the prosecutor from impeaching his credibility by inquiring about a prior robbery conviction in Tennessee. Moore offered to stipulate that he had previously been convicted of a felony provided that the nature of the offense was not mentioned. The court denied Moore's motion and stated:

THE COURT: Rule 609, and again, I have some problem with it, but I believe the rule is quite explicit, and I grant to counsel that there is no way to say that this is for credibility only, but under Rule 609 the State is entitled to bring in the conviction and what type conviction, what it's for.

[DEFENSE COUNSEL]: I would just add that 609 clearly gives the Court discretion to permit that.

THE COURT: Yes, sir, and I think that the discretion, and I do find that the probative value outweighs the prejudicial effect, I think that is the way in fact Rule 609 reads.

Solely because of this ruling, Moore chose not to testify and made the following offer of proof:

Okay. The defendant, if called to testify, would testify that he arrived in Seattle sometime in December. He lived in Seattle, he spent a substantial amount of time at the Trailways Bus Station in Seattle just visiting with Mr. Wright and Mr. Kemp, who will testify; that sometime around the first part of January he moved to Tacoma. I am sorry, the 14th of January he moved to Tacoma. He was living in Tacoma at first at the Missions and then at the Lincolnshire Hotel; that on January 24th, 1980, he did not come to Seattle, he did not rob the Trailways Bus Station; that he decided to go to Portland the next day and that on January

25th, 1980, while eating breakfast at a restaurant, he met three men, one of whom sold him a bus ticket to Salt Lake City. The man who sold him the ticket told him that that bus ticket had been obtained fraudulently from the Department of Social and Health Services, in which he had told Mr. Moore that these people had died in Salt Lake City, and this is what he told the Department, and that he needed to get there and back, that he obtained a fraudulent ticket, that he sold it to Mr. Moore at a substantial discount; that Mr. Moore attempted to trade that ticket in to get a refund for that ticket, knowing that he was essentially buying what he assumed was a hot ticket and that, of course, he was arrested at the Trailways Bus Station in Tacoma on January 25th, and that would be the nature of his testimony.

Mr. Wright and Mr. Kemp, employees of Trailways Bus Company, both testified to Moore's frequent presence in the bus station beginning in early December. A third defense witness testified that Moore rented a room in Tacoma on January 18, 1980. This witness recalled seeing Moore at about 1 p.m. on January 24 and recalled Moore's statement that he would be leaving town the next day. None of these witnesses, however, could testify concerning the alleged purchase of the bus ticket from a man in a restaurant.

On review, we concluded that the trial court erroneously fashioned a per se rule of admissibility despite its finding that the jury would tend to improperly use the prior conviction for purposes other than deciding issues of credibility. We were concerned with the special danger of allowing impeachment by evidence of conviction of a crime identical to the one charged and with the inability of Moore to present his defense unless he testified. We noted the slight probative value of assaultive crimes to veracity and the enhanced danger of prejudice in a case that ultimately turns on the credibility of the defendant. Our prior opinion also expressed concern over the trial court's apparent refusal to consider Moore's offer to admit the fact of a prior felony conviction without naming the offense. Because the trial court had not had the benefit of the Supreme Court's

analysis of this issue in *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980), we remanded to the trial court to give it the opportunity to exercise its discretion under the guidelines of *Alexis.*

On remand, the court received memoranda of law from the parties and heard oral argument. No additional evidence was offered by either side concerning the probative value or prejudicial effect of the prior conviction. Moore argued for exclusion of the prior conviction or, alternatively, for impeachment without naming the offense. The trial court found that Moore had one prior felony conviction for robbery that was 6 years old at the time of his trial. The court also found that Moore was 39 years old at the time of his trial. The court entered the following conclusions of law:

1. The prior robbery conviction is of a very similar nature to the robbery charge tried in this matter. *State v. Thompson,* 95 Wn.2d 888 [632 P.2d 50] (1981) is controlling, however, and the Court concludes that the fact that the crimes are similar does not preclude the admissibility of the prior for impeachment purposes. The Court also relies on *State v. Jobe,* 30 Wn. App. 331 [633 P.2d 1349] (1981).

2. Credibility was the central issue at the trial of this case. Bearing in mind that *State v. Alexis,* 95 Wn.2d 15 (1980) requires a balancing of the defendant's interest in testifying against the State's interest in impeaching his testimony, and considering all of the *Alexis* factors, I find that the probative value of the prior conviction outweighs any prejudice to the defendant.

3. The Court's prior ruling that the prior conviction is admissible for impeachment purposes is reaffirmed. Retrial is not necessary.

Neither the court's oral opinion nor its written findings and conclusions contain any reference to Moore's offer to stipulate to impeachment by an unnamed prior offense.

█ The State first argues that the denial of Moore's motion in limine is not reviewable because it was not renewed at trial. *State v. Wilson,* 29 Wn. App. 895 (1981). Moore, however, made a complete record at the motion in

limine, and the trial court's ruling was final, not tentative or advisory. Here, the issue of impeachment by prior conviction was ideally suited for final determination in a pretrial motion that minimized trial disruption and preserved the matter for appellate review. It was unnecessary to renew the objection at trial. *State v. Latham,* 30 Wn. App. 776, 638 P.2d 592 (1981), *review granted,* 97 Wn.2d 1006 (1982); *see State v. Brooks,* 20 Wn. App. 52, 579 P.2d 961 (1978).

■ The State next argues that any error was rendered harmless by Moore's decision not to testify. Moore's testimony, however, was the only possible means of placing his defense before the jury. Had he testified and had he been improperly impeached, the error would have been prejudicial. *State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963). His decision not to testify did not eliminate the prejudice resulting from a ruling that, if erroneous, denied him a fair opportunity to present a defense.

■ The State's next contention is that robbery is a crime involving dishonesty and is per se admissible under ER 609(a)(2). In *State v. Zibell,* 32 Wn. App. 158, 646 P.2d 154 (1982), we held that the crimes of "dishonesty or false statement" admissible per se under ER 609(a)(2) are those that bear directly upon the accused's propensity to testify truthfully. This ruling supports the view expressed in our first opinion in *Moore* that assaultive crimes like robbery are not crimes involving dishonesty or false statements. We adhere to that view.

The remaining issue is whether the trial court abused its discretion when it admitted the prior conviction. The controlling rule is ER 609(a)(1), which provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to

the defendant . . .

■■ Here, the trial court relied on the centrality of the credibility issue. In *State v. Renfro,* 28 Wn. App. 248, 255, 622 P.2d 1295 (1981), *aff'd,* 96 Wn.2d 902, 639 P.2d 737 (1982), the court recognized that where a defendant's credibility is a key factor in a determination of guilt or innocence, evidence of a prior conviction has a greater prejudicial effect than in other cases. Some other decisions have focused on a prior conviction's probative value where credibility is a key issue. *See State v. Pam,* 30 Wn. App. 471, 635 P.2d 766 (1981), *review granted,* 97 Wn.2d 1002 (1982); *State v. Jobe,* 30 Wn. App. 331, 633 P.2d 1349 (1981). The probative and prejudicial factors, however, must be balanced in a proper exercise of discretion under ER 609(a)(1). *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981).

The trial court was presumably aware that whenever a defendant elects to testify in a criminal case, his or her credibility is at issue. This recurring issue of a testifying defendant's credibility is never sufficient by itself to sustain impeachment by prior conviction because such per se admissibility is precisely what ER 609(a)(1) prohibits. *State v. Alexis, supra.* While under different circumstances the centrality of the credibility issue might permit impeachment, under the facts of this case, the trial court's reliance on this factor came dangerously close to per se admissibility and was an abuse of discretion.

An abuse of discretion is established only if the trial court acted upon untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971). The trial court correctly noted that the similarity of the prior offense did not bar impeachment, *State v. Thompson, supra,* and also stated that it had considered all of the factors in *Alexis.* The trial court erred, however, because a comparison of the centrality of the credibility issue with other relevant factors in this case establishes no tenable ground for allowing impeachment by the prior rob-

bery conviction.

The trial court considered but evidently overlooked the significance of three factors that weigh against impeachment. First, the identity of the prior and present offenses creates an increased risk that the evidence will be misused. Second, the slight probative value of robbery on the issue of whether Moore is a liar reduces the importance of allowing impeachment. Third, the inability of Moore to present a defense in any manner other than through his own testimony increases the importance of the jury hearing the defendant's account of the events. A comparison of these factors with the centrality of the credibility issue compels the conclusion that the importance of the jury hearing about the prior conviction is far less than the importance of hearing Moore's testimony. *See State v. Thompson, supra.*

Our conclusion in this case that impeachment by a prior identical offense is more prejudicial than probative is not changed by the mere fact that the State has no other prior offense with which to impeach the defendant. The State will have the opportunity to cross–examine Moore concerning his alibi claim, and cross examination is the most effective tool ever devised for uncovering the truth. Here, impeachment by a marginally probative, prior identical offense creates an undue risk of hindering the search for the truth.

The danger that the jury would misuse the impeachment evidence to conclude that Moore was guilty might have been avoided by allowing impeachment by a prior unnamed offense, but the trial court in its findings and conclusions did not consider the alternative of limiting impeachment to the fact of a prior unnamed felony conviction. The judgment is reversed, and the matter remanded for a new trial at which Moore shall not be impeached by a named prior robbery conviction if he chooses to testify. The trial court may upon retrial consider whether to permit impeachment by a prior unnamed felony.

Reversed.

PETRICH, J., concurs.

Reconsideration denied October 29, 1982.