[No. 35649-6-I.    Division One.    September 16, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. JUAN R. GONZALES, *Defendant*, VICTOR F. VALENZUELA, *Appellant*.

588

*Eric J. Nielsen* and *Nielsen & Acosta*, for appellant.
*Norm Maleng, Prosecuting Attorney*, and *Erin Riley, Deputy*, for respondent.

COLEMAN, J. — Victor Valenzuela appeals his conviction for delivering cocaine. We find that the trial court conducted a proper *Alexis*[1] analysis before admitting Valenzuela's prior convictions for delivery and possession of cocaine as unnamed felonies under ER 609(a)(1). We affirm.

Valenzuela was charged with one count of delivering cocaine based on the testimony of Seattle police officers who conducted an undercover narcotics operation near Pike Place Market on June 27, 1994. The officers testified as to the following interaction between Valenzuela and Officer Fields, the undercover buyer. Officer Fields made eye contact with Valenzuela and asked if he had any "white," a street term for powder cocaine. Valenzuela asked Officer Fields how much he wanted, and the officer indicated $40 worth. Valenzuela said he would get it, entered the Turf Restaurant, and motioned to someone. A man later identified as Roberto Hernandez approached and spoke to Valenzuela. Hernandez handed Valenzuela two small pink items as the two men walked toward the

---

[1]*State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980).

officer. Refusing to consummate the deal inside the restaurant like they wanted him to do, Officer Fields walked away. Valenzuela followed him to the Newmark Building. Valenzuela gave the officer two pink balloon bindles containing cocaine in exchange for the money. After the transaction was completed, Valenzuela handed Hernandez some money. Valenzuela and Hernandez were arrested after Officer Fields gave the prearranged "good buy" signal. The arresting officers found the buy money on Hernandez.

Prior to trial, the State moved to admit Valenzuela's 1989 convictions for delivery and possession of cocaine. The trial court reserved its ruling, noting that the prior convictions had "some impeachment value" but expressing concern over the similarity between the prior crimes and the current charge. The court further stated that, if the prior convictions were admitted, it would consider whether they should be named or unnamed.

Valenzuela testified that he was not in the Turf restaurant that day, did not know Hernandez, and was not involved in the narcotics transaction. The State sought to impeach Valenzuela with his prior convictions. The trial court considered each of the *Alexis* factors and admitted the prior convictions as unnamed felonies. On cross examination, Valenzuela stated that he knew what cocaine was and knew from reading the paper that some people sold cocaine to earn money but that he did not personally know anyone who sold it. He also acknowledged that he had been convicted of "felony crimes" in 1989.

The jury found Valenzuela guilty as charged, and he received a standard range sentence.

■ Under ER 609, evidence of prior convictions may be admitted in certain circumstances to impeach a witness. The rule creates two categories of prior convictions. Those involving dishonesty or false statement are admissible per se under ER 609(a)(2). The offenses for which Valenzuela had been convicted do not fall within this category. Under ER 609(a)(1), a prior conviction not included in the first

category may be admitted, within the trial court's discretion, after the prejudicial impact of the prior conviction has been weighed against its probative value. To conduct this balancing, the trial court must consider the following factors on the record:

(1) the length of the defendant's criminal record;

(2) the remoteness of the prior conviction;

(3) the nature of the prior crime;

(4) the defendant's age and circumstances at time of the prior offense;

(5) the centrality of credibility at the current trial; and

(6) the impeachment value of the prior crime at the current trial.

*State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980). *See also State v. Jones*, 101 Wn.2d 113, 121-122, 667 P.2d 131 (1984) (enumerating six analogous factors), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988), *adhered to on reh'g*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R. 4th 989 (1989).

The trial court in the present case concluded that neither the length of Valenzuela's criminal history nor his age and the circumstances at the time of his prior convictions weighed in favor of excluding the evidence. The remoteness factor did not favor either admission or exclusion, the court found, because Valenzuela's prior convictions were both five years old, half of the ten-year limit under ER 609(b). Valenzuela does not challenge the court's analysis of these three factors.

The centrality of credibility factor, which Valenzuela concedes could be a neutral factor in the present case, reflects the underlying concern that the prospect of having a defendant's criminal history listed for the jury might deter him or her from testifying. *Jones*, 101 Wn.2d at 119. The trial court properly noted that this concern was not raised here; Valenzuela chose to testify knowing the State might seek to impeach him with his prior convictions. The

centrality of credibility factor also addresses the competing concern that a jury be given the means to assess the credibility of a defendant who does testify. *Jones*, 101 Wn.2d at 119. Here, the trial court properly observed that admission of impeachment evidence was important because Valenzuela did testify and denied any involvement in, or knowledge of, the charged crime. It was reasonable for the trial court to conclude upon considering these competing interests that this factor weighed in favor of admission.

Valenzuela asserts that the trial court erred in finding that his prior convictions had impeachment value because the State did not explain to the jury how the unnamed felonies impeached his credibility. He provides no authority for the proposition that the State must argue prior crimes evidence to the jury. Nor does he argue that the trial court failed to give the jury a limiting instruction. Although the court's instructions to the jury were not made a part of the record on appeal, we assume from the lack of argument to the contrary that the jury was instructed on the limited use of prior conviction evidence.

The only authority Valenzuela offers in support of his argument on this factor is dicta in *State v. King*, 75 Wn. App. 899, 911, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021 (1995), which notes an apparent inconsistency between admitting abstract prior conviction information to reflect upon a witness's credibility and *Jones*'s admonition that it is impermissible to infer from the mere fact of conviction that a witness may be less likely to testify truthfully. That observation does not advance Valenzuela's argument. The court in *King* questioned the practice of allowing prior felony convictions to come in unnamed, but it nonetheless declined to hold that the practice of admitting unnamed felonies was improper. Valenzuela does not ask us to review the long-standing practice of using unnamed felonies. He assigns error only to the trial court's analysis of the impeachment value factor. But how prior crimes evidence is presented to the jury is not part

of the court's initial assessment of the probative impeachment value reflected in the nature of the prior offense. The court must consider this factor assuming that the crime will be named to the jury.

■ Although the trial court did not specifically explain how Valenzuela's prior offenses were probative of his credibility, our Supreme Court has recognized the probative impeachment value arising from a conviction for delivering drugs. "'[A] narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.'" *State v. Thompson*, 95 Wn.2d 888, 892, 632 P.2d 50 (1981) (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir.), *cert. denied*, 434 U.S. 897 (1977)). The strength of the probative value derived from mere possession of a controlled substance has been questioned, however. *See Jones*, 101 Wn.2d at 122-123. But any error in admitting Valenzuela's prior conviction for drug possession did not likely have a material effect on the outcome of the trial. His convictions were ultimately not named, and even if they had been, the jury would have already heard of his delivery conviction; his conviction for drug possession would have engendered little additional prejudice.

■ Evaluation of the nature of the prior crime includes consideration of the similarity between the prior crime and the current offense. The Supreme Court in *Jones* noted that the greater the similarity between the prior and current offenses, the greater the potential for prejudice. *Jones*, 101 Wn.2d at 121. The trial court here voiced concern over the potential prejudicial impact of admitting prior VUCSA convictions in a VUCSA trial. This factor is not determinative, however. *See Thompson*, 95 Wn.2d at 892-93; *State v. Jobe*, 30 Wn. App. 331, 633 P.2d 1349 (1981). The similarity of the crimes is but one of six factors the trial court weighs in balancing the probative value of the impeachment evidence and its potential for prejudice. In the current case, similarity of the crimes was the only fac-

tor, in the trial court's view, that weighed against admission of the prior conviction evidence. The overall balancing of the *Alexis* factors is left to the discretion of the trial court. *State v. Begin*, 59 Wn. App. 755, 762, 801 P.2d 269 (1990), *review denied*, 116 Wn.2d 1019 (1991).

■ After evaluating the named crimes under each *Alexis* factor, the court found the evidence necessary for impeachment purposes but remained concerned about the prejudicial effect of allowing the jury to hear of the same or similar crimes. To ameliorate potential prejudice from the similarity, the court allowed the convictions to be presented to the jury as unnamed felonies. The practice of admitting unnamed felonies has been approved on the condition that it not be used in place of a proper *Alexis* balancing. *See, e.g., State v. Gomez*, 75 Wn. App. 648, 655-56, 880 P.2d 65 (1994); *State v. White*, 43 Wn. App. 580, 585-86, 718 P.2d 841 (1986); *State v. Friederick*, 34 Wn. App. 537, 543, 663 P.2d 122 (1983); *State v. Moore*, 33 Wn. App. 55, 62, 651 P.2d 765 (1982).

■ The trial court did not substitute the "unnamed felony device" for a meaningful balancing as Valenzuela suggests. The trial court considered the specific crimes under each *Alexis* factor without letting the option of unnaming the prior convictions improperly influence its analysis. Only after each factor had been weighed and the court turned to balancing the factors as a whole did the unnaming option enter the analysis. The overall balancing is the appropriate time to consider unnaming prior convictions, as the Court of Appeals noted in *White*.

> [T]he determination of whether to name or not name the prior convictions introduced for the purposes of impeachment should rest with the discretion of the trial judge as an additional aspect of the ultimate determination that the prejudicial effect of the evidence on the defendant does not outweigh its probative value.

*White*, 43 Wn. App. at 586. When the trial court finds the prior conviction evidence necessary for impeachment

purposes in a given case but remains concerned about the prejudicial effect of the similarity of the crimes, the court may consider unnaming the convictions as a means to lessen the prejudice arising from the similarity of the prior and current crimes.

Citing *White*, the court in *King* recently reiterated the concern that a felony might be unnamed to avoid a proper *Alexis*[2] analysis. *King*, 75 Wn. App. at 908. While *King* could be read to suggest that the option of unnaming a prior conviction can never enter into an *Alexis* analysis, that opinion must be interpreted in light of *White*, which *King* quotes to explain the proper application of unnaming. *White*, and the earlier cases it summarized, caution against using unnamed felonies to displace consideration of specific crimes under the relevant factors. This concern arises because the option of unnaming a prior conviction is not relevant to any of the *Alexis* factors other than to minimize the prejudice arising from the similarity between the prior and current offense. For this reason, the cases emphasize that factors unrelated to the underlying reasons for unnaming prior convictions must not be influenced by that option. Unnaming is directly related to the similarity of crimes factor, however. When the trial court determines, upon consideration of specific crimes, that prior conviction evidence is necessary for impeachment purposes, the ability to ameliorate prejudice inherent in the similarity of crimes is appropriately considered by the trial court in its overall balancing of the *Alexis* factors.

The trial court in the present case considered each *Alexis* factor on the record under the assumption that the prior crimes would be named to the jury. Only after completing its analysis of the named crimes and concluding that the prior convictions were necessary for impeachment purposes did the court consider how it could lessen the prejudice from the similarity of the prior and current offenses. The court engaged in a proper and meaningful

---

[2]*State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980).

*Alexis* analysis before deciding to allow the State to impeach Valenzuela with his prior convictions as unnamed felonies.

The judgment and sentence are affirmed.

KENNEDY, A.C.J., and COX, J., concur.