IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| In re the Personal Restraint of | No. 47042-0-II |
| JOSE GASTEAZORO-PANIAGUA, | UNPUBLISHED OPINION |
| Petitioner. | |

BJORGEN, C.J. — Jose Gasteazoro-Paniagua seeks relief from personal restraint imposed following his convictions for attempted first degree murder, with an associated firearm enhancement, and for first degree unlawful possession of a firearm. He makes three primary claims in his personal restraint petition (PRP): (1) the State suppressed favorable evidence in violation of *Brady*,[1] resulting in prejudice to him; (2) the State engaged in prosecutorial misconduct by improperly vouching for its primary witness, TJ[2]; and (3) he received ineffective assistance of counsel because his counsel (a) failed to investigate the underlying facts of TJ's charges, (b) failed to impeach TJ with his prior convictions, (c) failed to object to the State's vouching of TJ, (d) asked TJ questions during cross-examination that resulted in unfavorable responses, and (e) agreed to not call TJ a liar during closing argument. For the reasons set out in this opinion, we hold that Gasteazoro-Paniagua fails to meet his burden under the PRP standard to show prejudicial error on these bases resulting in any relief. Accordingly, we deny his request for a reference hearing and relief from restraint.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[2] We refer to the witness by his initials to protect his privacy.

FACTS

The facts underlying Gasteazoro-Paniagua's convictions are set out in the following passage from our decision of his direct appeal:

> On December 30, 2009, at approximately 10:30 PM, a man dressed in a dark-colored hooded sweatshirt entered the Buy Low Market in Clark County, Washington, and shot Jose Muro five times. Muro was stocking the Buy Low's walk-in refrigerator when he was shot. He survived. The police did not recover the gun.
>
> Muro and Gasteazoro-Paniagua were best friends but had a falling out when Gasteazoro-Paniagua had an affair with Muro's brother's wife, Nicole Sanchez. Muro called Gasteazoro-Paniagua about an hour before he was shot in response to a text message from Gasteazoro-Paniagua. Although they were no longer friends, Gasteazoro-Paniagua asked Muro if he wanted to meet for a drink; Muro declined, telling Gasteazoro-Paniagua that he was at work.
>
> On January 7, Yakima Police Department officers arrested Gasteazoro-Paniagua in Yakima. Detectives Rick Buckner and Lindsay Schultz of the Clark County Sheriff's Department interviewed Gasteazoro-Paniagua just after midnight at the Yakima Police Department. At Gasteazoro-Paniagua's arraignment on June 10, the State filed a second amended information charging Gasteazoro-Paniagua with attempted first degree murder with a firearm enhancement and a first degree unlawful possession of a firearm charge. RCW 9.41.040(1)(a); RCW 9.94A.533(3), .825. Gasteazoro-Paniagua pleaded not guilty to all charges.

*State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 753-54, 294 P.3d 857 (2013).

At trial, the State's key witness was TJ, an individual who had shared the same cell block with Gasteazoro-Paniagua. TJ represented that while in jail, Gasteazoro-Paniagua told him that he had shot Muro. TJ had pending charges of one count of first degree murder and three counts of first degree robbery—each count with a firearm enhancement. TJ entered into a plea deal with the State in which, in exchange for significantly reduced charges and possible incarceration time, he was required to "provide complete and truthful testimony" in Gasteazoro-Paniagua's trial. Br. of Resp't, App'x G, Exh. 2. TJ was also required to testify against his co-defendants in the case involving his pending charges.

During the trial, TJ testified and was subject to direct examination by the State and cross-examination by Gasteazoro-Paniagua's defense attorney.  Both sides questioned TJ in a way that elicited his plea agreement with the State, which we review in our Analysis in greater detail.

At the trial's conclusion, a jury found Gasteazoro-Paniagua guilty as charged.  We affirmed Gasteazoro-Paniagua's convictions in *Gasteazoro-Paniagua*, 173 Wn. App. 751 (2013).

Attached to his PRP, Gasteazoro-Paniagua submitted a declaration from his trial counsel alleging that (1) the State did not provide counsel any discovery related to the murder and robbery charges against TJ; (2) he failed to conduct an independent investigation into the facts underlying TJ's charges; (3) if he had known the specific facts underlying TJ's murder and robbery charges, he would have impeached TJ with them; and (4) if he had known TJ's prior convictions for taking a motor vehicle without permission, second degree assault, and bail jumping, he would have impeached TJ with them.

Gasteazoro-Paniagua also attached to his PRP police reports reflecting the initial investigations into TJ's robbery and murder charges, which relate to Gasteazoro-Paniagua's claim of a *Brady* violation.  The police reports reflect officer observations and victim interviews related to a home invasion by TJ and several other intruders that occurred in Vancouver.  Two of the victims, CM and AS,[3] were in the residence's bedroom when an intruder came in aiming a shotgun at them.  Police Report at 15.  A struggle ensued between CM and that intruder, which resulted in CM being shot and killed.  AS was then escorted into the living room, where several other intruders were present.

Also in the living room was a third victim, AK, who was awakened by an intruder pointing a gun at him.  This intruder repeatedly demanded to know where drugs or money were

---

[3] We refer to the victims by their initials to provide anonymity.

located. The same intruder eventually learned that a safe was in one of the bedrooms, and AK told him the combination for it, though he said he had never been able to open it. Displeased with this response, the same intruder stuck his handgun into AK's mouth, enough to dislodge AK's dental plate. Upon learning that they were leaving, the same intruder removed his handgun from AK's mouth and struck his head, stating, "That's for not knowing nothin [*sic*]!" Br. of Appellant, App'x, Police Report (Dec. 14, 2009).

Based on this additional submitted evidence and the trial record, Gasteazoro-Paniagua raises three primary claims, addressed below, arguing that he is entitled to a reference hearing or relief from restraint.

ANALYSIS

I. PRP LEGAL PRINCIPLES

"To be entitled to collateral relief through a PRP the petitioner must prove error 'by a preponderance of the evidence.'" *In re Pers. Restraint of Crow*, 187 Wn. App. 414, 420-21, 349 P.3d 902 (2015) (quoting *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 490, 251 P.3d 884 (2010)). If the petitioner is able to show error, he or she then must also prove prejudice, the degree of which depends on the type of error shown. *Id.* at 421.

If a constitutional error, the petitioner must demonstrate it resulted in actual and substantial prejudice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). "Actual and substantial prejudice, which 'must be determined in light of the totality of circumstances,' exists if the error 'so infected petitioner's entire trial that the resulting conviction violates due process.'" *Crow*, 187 Wn. App. at 421 (quoting *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985)). If a nonconstitutional error, the petitioner must meet a stricter standard and demonstrate the error resulted in a fundamental defect which inherently

resulted in a complete miscarriage of justice. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015); *Woods*, 154 Wn.2d at 409. We deny the PRP if the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect. *Schreiber*, 189 Wn. App. at 113.

If the petitioner makes a prima facie showing of prejudicial error, we then examine the State's response, which must "'answer the allegations of the petition and identify all material disputed questions of fact.'" *Monschke*, 160 Wn. App. at 489 (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 828 P.2d 1086 (1992). To identify disputed questions of fact, the State must meet the petitioner's evidence with its own competent evidence. *Id.* We will remand the case to the lower court to hold a reference hearing to resolve any factual questions if evidence establishes the existence of material disputed issues of fact. *Id.* However, if after taking the State's argument and evidence into consideration, we find the petitioner nonetheless proves prejudicial error, we will grant the PRP without remanding for a further hearing. *Id.*

## II. *BRADY* EVIDENCE[4]

Gasteazoro-Paniagua argues that the State failed to disclose the underlying facts of the pending criminal charges against TJ in violation of *Brady*. Assuming, without deciding, that this evidence was both favorable to him and was suppressed by the State, we hold that Gasteazoro-Paniagua fails to demonstrate the requisite prejudice under *Brady* to grant him relief.

In *Brady*, 373 U.S. at 87, the United States Supreme Court held that

> suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

---

[4] Gasteazoro-Paniagua withdrew the portion of his argument in which he contended that the State failed to disclose TJ's prior convictions. We accept his withdrawal and therefore do not address this specific argument.

A *Brady* violation can be established if the petitioner demonstrates that (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the State willfully or inadvertently suppressed that evidence; and (3) the result of suppressing the favorable evidence caused prejudice. *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 486-87, 276 P.3d 286 (2012). In order to show prejudice, the petitioner must show that "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 487 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1553, 131 L. Ed. 2d 490 (1995)). A "'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Kyles*, 514 U.S. at 434). The petitioner must show "that the favorable evidence could reasonably be taken to put the whole case in a different light." *Id.*

The police reports attached to Gasteazoro-Paniagua's PRP give us a small window into TJ's and his co-defendants' roles in the murder and robbery with which TJ was charged. The disclosure of this evidence, though, would not have created a reasonable probability of a different result at Gasteazoro-Paniagua's trial. TJ's charges themselves were disclosed to the defense. The underlying details of his criminal charges would not further impeach his credibility; the motivation behind TJ's deal with the State came from the murder and robbery charges he was facing and what benefit he would receive from the State in exchange for his testimony. Contrary to Gasteazoro-Paniagaua's contention, even if TJ played a larger role than the other intruders, that would add nothing to impeach his credibility.

Gasteazoro-Paniagua cites to *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) and *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014), for the proposition that the suppression of underlying details related to TJ's robbery and murder charges resulted in

6

prejudice to his trial. However, in those cases the defense was prevented from bringing out the key witness's probation status or pending convictions, not the underlying facts that led to those matters. *Davis*, 415 U.S. at 313-14, 317-18; *Amado*, 758 F.3d at 1139. Certainly, if TJ's charges themselves had not even been disclosed, Gasteazoro-Paniagua would be correct that his case is similar to *Davis* and *Amado*. However, there is no dispute that this evidence was given to Gasteazoro-Paniagua, and that he had in his control the key evidence to successfully impeach TJ's testimony. Thus, the admission of the underlying facts of his charges would not have created a reasonable probability of a different outcome at Gasteazoro-Paniagua's trial. *Stenson*, 174 Wn.2d at 487.

Accordingly, his *Brady* claim fails.

### III. PROSECUTORIAL MISCONDUCT

Gasteazoro-Paniagua next contends that the State engaged in prosecutorial misconduct when it improperly vouched for TJ during direct and redirect examination by eliciting his plea agreement to testify truthfully. We disagree.

To establish prosecutorial misconduct, the petitioner must prove that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Because Gasteazoro-Paniagua did not object, he is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). In *State v. Ish*, 170 Wn.2d 189, 194, 199, 206, 241 P.3d 389 (2010) (plurality opinion), five justices held that the State's two questions during direct examination, which elicited from the witness that he had an agreement with the State to testify truthfully, constituted

improper vouching. However, eight justices implicitly agreed that any effect from the witnesses'

two answers did not prejudice Ish. *See id.* at 200-01, 206.

Gasteazoro-Paniagua specifically challenges two parts of TJ's testimony as improper

vouching. The first instance occurred in TJ's direct testimony:

> [Prosecutor]: Okay. What other matters are you assisting the State on?
> [TJ]: My case.
> [Prosecutor]: Your case?
> [TJ]: Yes.
> [Prosecutor]: In . . . in relation to what?
> [TJ]: I have, I believe, five or six other co-defendants.
> [Prosecutor]: Okay. And your agreement is to do what?
> [TJ]: To tell the truth there as well.
> [Prosecutor]: Against your co-defendants?
> [TJ]: Yes.

Report of Proceedings (RP) at 1447.

Here, the State asked what TJ's agreement required him to do in the case against him and

his co-defendants, not the present case involving Gasteazoro-Paniagua. TJ replied that it was "to

tell the truth there as well." RP at 1447. Assuming without deciding that the prosecutor's

questions were improper, any impropriety could easily have been cured by an objection and a

curative instruction. Therefore, under *Emery*, 174 Wn.2d at 760-61, the defendant has waived

this vouching challenge.

Gasteazoro-Paniagua's other claim of vouching occurred during the State's redirect

examination of TJ:

> [Prosecutor]: Now, your agreement to assist the State in this case as well as the other cases, what is your understanding of it . . . [what] is your obligation?
> [TJ]: To tell the truth and testify on everyone that I'm supposed to.
> . . . .
> [Prosecutor]: What are you supposed to do?
> [TJ]: Tell the truth.
> [Prosecutor]: And are you doing that today?
> [TJ]: Absolutely.

RP at 1472-73.

In the cross-examination that occurred before this testimony, Gasteazoro-Paniagua's trial counsel attacked TJ's veracity, bringing out whether his deal with the State actually ensured that he was telling the truth about Gasteazoro-Paniagua's alleged admission. Eight justices in *Ish*, 170 Wn.2d at 200-01, 203-06, implicitly agreed that when the defense attacks a witness's credibility, the State can rehabilitate that witness through the truth telling provision of a plea deal. Thus, the State's questions on redirect cannot be considered as improper vouching, but rather as an appropriate means to repair its witness's credibility after an attack.

Accordingly, Gasteazoro-Paniagua's claims of prosecutorial misconduct fail.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Gasteazoro-Paniagua alleges five different claims of ineffective assistance of counsel, arguing it was deficient and prejudicial for his trial counsel (1) to not investigate the underlying facts of TJ's pending charges; (2) to not impeach TJ with his prior convictions; (3) to not object to the prosecutor's vouching; (4) to ask TJ questions during cross-examination that received unfavorable responses; and (5) to agree not to call TJ a "liar" during closing argument. For the reasons discussed below, we disagree with Gasteazoro-Paniagua and hold that he did not receive ineffective assistance of counsel.

### 1. Legal Principles

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance claim, the petitioner must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). If a petitioner fails to establish either prong, we need not inquire

further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Representation is deficient "if it falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id.* at 34.

2.      Failure to Investigate Underlying Facts of TJ's Charges

Gasteazoro-Paniagua argues that his counsel was ineffective because he failed to investigate the underlying facts of TJ's charges, depriving him of an opportunity to further impeach TJ. He cites *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013), which held that, in the context of counsel's duty to conduct a reasonable investigation, "[a] key prosecution witness's prior criminal history and resultant parole status clearly constitute important impeachment evidence." Br. of Appellant at 10-11. Here, however, defense counsel discovered TJ's pending murder and robbery charges and impeached him during cross-examination with those charges. Unlike *Grant*, 709 F.3d at 234, where defense counsel completely failed to investigate the key witness's criminal charges or parole status, trial counsel completed a more thorough inquiry. Although counsel may not have obtained the documents related to TJ's underlying charges, such as the police reports, he was not required to complete an exhaustive investigation into those charges when he had the key impeachment evidence.

Accordingly, this claim fails.

3.      Failure to Impeach TJ with Prior Convictions

Gasteazoro-Paniagua argues that he received ineffective assistance of counsel because counsel did not attempt to impeach TJ with his prior convictions. We disagree.

TJ had the following pertinent prior convictions: taking a motor vehicle without permission, bail jumping, and second degree assault.[5] As to the taking a motor vehicle without permission conviction, trial counsel did attempt to admit this conviction to impeach TJ, but the trial court ruled that the conviction inadmissible because it was a juvenile offense over 10 years old.

As to counsel's failure to impeach TJ on the bail jumping and second degree assault convictions, we assume, without deciding, that counsel was deficient for failing to bring up these convictions. We conclude, however, that no prejudice resulted from their absence for two reasons.

First, the jury already knew TJ's primary motivation for testifying: his agreement with the State. The probative value of a prior conviction is lessened if other evidence is available to test the witness's credibility. *See State v. Alexis*, 95 Wn.2d 15, 20, 621 P.2d 1269 (1980). The jury knew that TJ was currently charged with first degree murder and three counts of first degree robbery, along with firearm enhancements. The jury knew that his prison time would be reduced from a range of 610 to 733 months to 126 months under the agreement with the State. Since TJ's current charges and his agreement with the State were admitted at trial, the two prior convictions would have added little to further impeach TJ's credibility.

Second, the characteristics of the second degree assault and bail jumping convictions do not lend themselves to damaging TJ's credibility in any material way. Generally, the more remote in time a prior conviction is, the less impact it has on a witness's credibility. *See State v.*

---

[5] TJ also has convictions for third degree driving while license suspended and first degree negligent driving, but Gasteazoro-Paniagua does not allege that the failure to impeach TJ on these convictions resulted in any prejudice to his trial. Thus, we do not address them.

*Saunders*, 91 Wn. App. 575, 579, 958 P.2d 364 (1998). TJ's second degree assault and bail jumping convictions were fairly aged, both around eight years old. These prior convictions would not direct a large degree of light on his ability to tell the truth eight years later.

Further, the probative value of assaultive crimes on veracity is "slight." *State v. Moore*, 33 Wn. App. 55, 58, 651 P.2d 765 (1982). Thus, even if TJ's second degree assault conviction had more recently occurred, assaultive crimes already begin with a presumptively low value in impeaching a witness's veracity. As to the misdemeanor bail jumping conviction, it could have only been potentially admitted as a crime of dishonesty. ER 609(a)(2). The jury heard that TJ was charged with multiple robbery charges, which are crimes of dishonesty. *State v. Rivers*, 129 Wn.2d 697, 705, 921 P.2d 495 (1996). Thus, like the assault conviction, the addition of the prior misdemeanor bail jumping would have added little to the evidence already impeaching TJ's truthfulness.

For the above reasons, Gasteazoro-Paniagua's claim of ineffective assistance of counsel based on a failure to impeach TJ with his prior convictions fails.

4.      Failure to Object to Vouching

Gasteazoro-Paniagua argues that his trial counsel was ineffective because he did not object to the State's alleged two instances of vouching of TJ, noted above in Section III, during his direct and redirect examination. We disagree.

To prove that failure to object rendered counsel ineffective, the petitioner must show that (1) not objecting fell below prevailing professional norms, (2) the proposed objection would likely have been sustained, and (3) the result of the trial would have been different if the evidence had not been admitted. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

The first claimed instance of vouching centered on the following question about a different case, and TJ's answer to it:

> [Prosecutor]: Okay. And your agreement is to do what?
> [TJ]: To tell the truth there as well.

RP at 1447. In Section III above, we hold above that even if we assume without deciding that the prosecutor's questions were improper, any resulting prejudice could have been cured by an instruction. Thus, the ineffective assistance of counsel issue reduces to whether the result of the trial would likely have differed had defense counsel obtained a curative instruction for this assumed improper vouching.

We conclude the result would not likely have differed. Even if the State's questions had been objectionable as vouching, defense counsel impeached TJ's credibility on cross-examination by bringing out the incentive from his plea deal to say Gasteazoro-Paniagua confessed. Counsel also impeached TJ's credibility by emphasizing that TJ remembered all the specifics of his conversation with Gasteazoro-Paniagua, but could not remember what he told his wife about their conversations. In the face of these assaults on TJ's credibility, the prosecutor's question about a different case and TJ's "tell the truth there as well" answer would have done little to bolster his credibility in the present case. Thus, even if the failure to object was deficient, the evidence that would have been stricken through a successful objection likely had no effect on the result of the trial. Under *Davis*, 152 Wn.2d at 714, it does not constitute ineffective assistance of counsel.

The failure to object to the second claimed instance of vouching, the State's elicitation of TJ's obligation to tell the truth, may be more briefly addressed. In Section III we held that the alleged vouching was not improper under *Ish*. Thus, any objection to it would likely not have been sustained, and therefore no change in the witness's testimony or the outcome of trial would

have occurred. Accordingly, the failure to object did not constitute ineffective assistance of counsel.

5.      Questions During Cross-Examination of TJ

Gasteazoro-Paniagua argues that his counsel was ineffective because during cross-examination he asked questions in two instances that prompted TJ to give an unfavorable response. The first exchange is as follows:

> [Defense Counsel]:   So you made a conscious effort after talking to [Gasteazoro-Paniagua] a little bit to try to dig information out of him that would be incriminating; is that correct?
> [TJ]:                Yes.
> [Defense Counsel]:   And you did that for the sole purpose of benefitting from it and dealing it with law enforcement; correct?
> [TJ]:                No.
> [Defense Counsel]:   *What other purpose did you do it for?*
> [TJ]:                Like I said, after talking to him and getting the gist that he was the one who did it, I really didn't feel comfortable, you know, going away for even a day and having the potential of having him around my kids, because they were living with my brother at the time.
> [Defense Counsel]:   So the reason you decided to do it was so that you could help put him behind bars?
> [TJ]:                No. To keep my family safe.

RP at 1450 (emphasis added).

The law presumes effective representation, and it is Gasteazoro-Paniagua's burden to show no legitimate trial strategy. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). He has failed to argue the absence of a legitimate trial strategy[6] and thus has not met his burden to show ineffective assistance on this ground.

Gasteazoro-Paniagua also challenges the following line of questioning during his counsel's cross-examination of TJ:

---

[6] Instead, Gasteazoro-Paniagua's briefing focuses on the prejudice derived from the defense counsel asking this open ended question.

> [Defense Counsel]: And part of the reason you're testifying against your friend over here, Mr. Gasteazoro, is because you're gonna get a benefit from it; correct?
> [TJ]: Yes.
> [Defense Counsel]: But the other part is 'cause you don't want him out on the street –
> [TJ]: Yes.
> [Defense Counsel]: -- because you're afraid of him.
> [TJ]: Because I'm worried about my kids and my family.

RP at 1468. Indeed, trial counsel here highlights TJ's other alleged motive to testify, which was to protect his family from Gasteazoro-Paniagua. However, counsel immediately followed up this exchange with an emphasis on how the State's deal gave TJ only eight years in prison in lieu of the possibility of sixty years:

> [Defense Counsel]: And your agreement is you get 126 months.
> [TJ]: Yes.
> [Defense Counsel]: So do you have any idea how many years that would be if you get good time with that?
> [TJ]: I think like eight years, ten months.
> [Defense Counsel]: Haven't figured it out (laughing)? Eight years, ten months?
> [TJ]: I think that's what it is.

RP at 1468. It was a legitimate trial tactic for counsel to bring up both of TJ's motives, but emphasize that his incentive for the reduction of his charges greatly outweighed his alleged belief that Gasteazoro-Paniagua was a dangerous individual.

Accordingly, defense counsel's questions during cross-examination do not constitute deficient performance.

6. Agreement to Not Call TJ a "Liar"

Gasteazoro-Paniagua finally contends that his counsel's agreement not to call TJ a "liar" during closing argument constituted ineffective assistance of counsel. Br. of Appellant at 7, 15-16. However, it was a legitimate trial strategy for counsel to *show* the jury that TJ was a liar through his motivation related to his plea deal with the State, rather than just *tell* the jury he was

a liar. Counsel's choice to allow the jury to surmise for itself TJ's motivation in testifying against Gasteazoro-Paniagua does not constitute ineffective assistance of counsel.

CONCLUSION

For the reasons stated above, we hold that Gasteazoro-Paniagua fails to meet his burden under the PRP standard to show any prejudicial error. We thus deny his request for a reference hearing and relief from restraint.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Lee, J.